**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ricardo A. GONZALES, Defendant–**
**Appellant.**

No. 93–9046.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1994.

Peter Fleury, Asst. Federal Public Defender, Ira R. Kirkendoll, Federal Public Defender, Fort Worth, TX, for appellant.

Christopher Stokes, Asst. U.S. Atty., Paul E. Coggins, U.S. Atty., Fort Worth, TX, for appellee.

Before GOLDBERG, JOLLY and WIENER, Circuit Judges.

PER CURIAM:

In this direct criminal appeal, Defendant–Appellant Ricardo A. Gonzales contests his convictions for (1) obstructing commerce by robbery in violation of 18 U.S.C. § 1951, and (2) knowingly using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). He also questions the sentence imposed by the district court. Although both issues are important to Gonzales, the narrow but significant sentencing issue—the distinction between "brandishing" and "otherwise using" a firearm—is the one we deem important to this Circuit's burgeoning jurisprudence on the United States Sentencing Guidelines (the guidelines).

Gonzales asserts that his convictions violate the Double Jeopardy Clause because all elements that are required to prove obstructing commerce by robbery are elements that are required to prove the offense of carrying and using a firearm during a violent crime. In his challenge of his sentence, Gonzales asserts that the district court erred in finding that he "otherwise used" a gun during the robbery, which finding resulted in a six-level increase to his sentence, rather than finding that he "brandished" a gun, which would have produced only a five-level increase.

We conclude that, as the statutes under which Gonzales was convicted authorize cumulative convictions and punishments, Gonzales' convictions for obstructing commerce by robbery and knowingly using and carrying a firearm do not violate the Double Jeop-

ardy Clause. We affirm, therefore, the district court's convictions of Gonzales on both offenses. We conclude, however, that the district court erred in finding that Gonzales had "otherwise used" a firearm, increasing Gonzales' sentence by six levels, instead of finding that he "brandished" a firearm to produce only a five-level increase. And, as we also find that this sentencing error was not harmless, we vacate Gonzales' sentence and remand for resentencing.

## I

### FACTS AND PROCEEDINGS

Gonzales was charged in two indictments of robbing a number of commercial businesses. The indictments, which contained a total of fifteen counts, included charges for obstructing, delaying, and affecting commerce by robbery, in violation of 18 U.S.C. § 1951, and knowingly using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Gonzales pleaded guilty to a number of charges under each statute, on the basis of which he was convicted by the district court and sentenced.

At Gonzales' sentencing hearing the court adopted the factual findings and sentencing recommendations contained in a presentence investigation report (PSR).[1] The PSR, and ultimately the district court, found that Gonzales pointed a firearm at a store clerk during one of the robberies. Applying this factual finding to the guidelines, the court determined that Gonzales had "otherwise used" a firearm in the robbery so that his base offense level should be increased by six lev-

els. In all, Gonzales was sentenced to a total of 322 months of imprisonment, to be followed by concurrently running supervised release times of three years on each count.

Despite his guilty plea Gonzales asserts that his convictions for obstructing commerce by robbery and using a firearm during a violent crime should be reversed as violative of the Double Jeopardy Clause. Gonzales also challenges the district court's legal application of the fact that he pointed a gun at one of the robbery victims to the enhancement rubric under the guidelines to conclude that he "otherwise used" a firearm—as distinguished from "brandished" a firearm—during the course of the robbery, thereby producing an increase to his base sentencing level for robbery of six levels.

## II

### ANALYSIS

#### A.  DOUBLE JEOPARDY

■  We review de novo, as a question of law, a claim of double jeopardy.[2]

■  Gonzales asserts that, as all elements that are required to prove the offense of obstructing commerce by robbery are included among the elements required to prove the offense of knowingly using and carrying a firearm during a crime of violence, his convictions for both offenses violate the Double Jeopardy Clause.[3] Gonzales relies on *United States v. Dixon*,[4] arguing that *Dixon* establishes that the "same elements" test, which is

1.  The findings ultimately adopted by the court included changes and qualifications made by an addendum as well as by the court in response to objections.

2.  *United States v. Atkins*, 834 F.2d 426, 431 (5th Cir.1987) (citing *Baker v. Metcalfe*, 633 F.2d 1198, 1201 (5th Cir. Unit A 1981), *cert. denied*, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981)) *overruled on other grounds*, *United States v. Deshaw*, 974 F.2d 667 (5th Cir.1992); *see also*, *United States v. Botello*, 991 F.2d 189, 192 (5th Cir.1993) (standard of review for district court's denial of a motion to dismiss on grounds of double jeopardy is de novo) (citing *United States v. Vasquez–Rodriguez*, 978 F.2d 867, 870 (5th

Cir.1992)), *cert. denied*, —— U.S. ——, 114 S.Ct. 886, 127 L.Ed.2d 80 (1994).

3.  *See* 18 U.S.C. § 1951(a) (1991) (defining "interference with commerce by threats or violence" as requiring proof of unlawful taking of personal property from person by actual or threatened force, or violence, or fear of injury); *see also* 18 U.S.C. § 924(c) (1994) (defining "crime of violence" as felony that has element of use, attempted use, or threat of physical violence against person or property).

4.  —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

used to determine whether multiple convictions violate the Double Jeopardy Clause, is the one and only test for questions involving double jeopardy.[5] His reliance on *Dixon* is misplaced.

■ Despite Gonzales' insistence to the contrary, cumulative convictions and punishments may be imposed when a legislature specifically authorizes cumulative punishments under separate statutes.[6] In *United States v. Allbright* we reasoned that, as *Dixon* does not address whether a statute that mandates cumulative punishment for related offenses violates the Double Jeopardy Clause, convictions and sentences that impose cumulative punishment pursuant to legislative intent are valid.[7]

In light of our decision in *Allbright*, in which we acknowledged Congress' intent to impose cumulative punishments for a violation of 18 U.S.C. 924(c) (using a firearm during a crime of violence) and other crimes of violence, Gonzales' claim that his convictions for using a firearm during a crime of violence and for obstructing commerce by robbery violates the Double Jeopardy Clause is without merit.

## B. SENTENCING GUIDELINES: What MANNER OF USE OF THE GUN?

### 1. *Standard of Review*

■ Gonzales claims that the district court erred when it determined that the fact that he pointed a gun at the robbery victim and told the store clerk to open the cash register constituted "otherwise using" a gun (which required the court to increase the base offense level for robbery by six levels) rather than constituting only the "brandishing" of a firearm (which requires only a five-level increase). Although we review a sentencing court's findings of fact under the " 'clearly erroneous standard,' "[8] we review de novo the application of factual findings to the sentencing guidelines.[9] As the issue here on appeal comprises the court's application of an undisputed factual finding to the applicable provision of the sentencing guidelines, the appropriate standard of review is de novo.

### 2. *"Brandished" or "Otherwise Used"?*

■ The guidelines establish the base offense level for robbery.[10] Additional offense levels are added to the base level according to any specific characteristics that apply to the particular robbery. The base level for a

---

5. *See e.g., Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (establishing "same element" test: test for determining whether multiple convictions under separate statutes violates the Double Jeopardy Clause is whether each conviction requires proof of a fact or element that the other does not).

Gonzales argues that *Dixon* firmly establishes that the "same elements" test is the proper standard to apply to questions of double jeopardy regardless of whether the question of double jeopardy arises from separate prosecutions or multiple punishments from a single prosecution.

Gonzales argues specifically that *Dixon* has overruled prior case law that affirms multiple convictions and multiple punishments on the ground that the statutes in issue permit cumulative punishments. *See e.g., United States v. Holloway,* 905 F.2d 893, 814 (5th Cir.1990) (affirming that conviction and imposition of punishment for both a federal felony offense and a use of a weapon offense does not violate the Double Jeopardy Clause); *see also Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (holding that the double jeopardy clause is not offended where Congress authorizes cumulative punishments even for the same offense).

6. *See e.g., United States v. Allbright,* No. 93–9139, slip op. at 2–3 (5th Cir. July 22, 1994) (commenting that argument that *Dixon* has overruled *Hunter* is without merit; holding that cumulative punishments may be imposed where a legislature specifically authorizes cumulative punishment under two statutes; and recognizing Congress' intent to impose cumulative punishment for violations of both 18 U.S.C. § 924(c) (using a firearm during crime of violence) and *other crimes of violence*).

7. *Id.* at 2. *See e.g., United States v. Portillo,* 18 F.3d 290, 291 (5th Cir.1994) (recognizing legality of imposing cumulative punishments when Congress intends cumulative punishments), *cert. denied,* —— U.S. ——, 115 S.Ct. 244, 130 L.Ed.2d 166 (1994); *see also United States v. Singleton,* 16 F.3d 1419, 1428 (5th Cir.1994) (same).

8. *United States v. Shell,* 972 F.2d 548, 550 (5th Cir.1992) (citing *United States v. Mourning,* 914 F.2d 699, 704 (5th Cir.1990)).

9. *Id.,* (citing *United States v. Otero,* 868 F.2d 1412, 1414 (5th Cir.1989)).

10. *See* U.S.S.G. § 2B3.1(a) (base level for robbery is 20).

robbery that involves the use of a firearm or other dangerous weapon is increased as follows:

> (2)(A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels; or (F) if an express threat of death was made, increase by 2 levels.[11]

The guidelines define (and distinguish) "otherwise used" and "brandishing" as follows:

> (c) "Brandished" with reference to a dangerous weapon (including a firearm) means that the weapon was *pointed* or waved about, or displayed *in a threatening manner.*
>
> .    .    .    .    .
>
> (g) "Otherwise used" with reference to a dangerous weapon (including a firearm) means that *the conduct* did not amount to the discharge of a firearm but *was more than brandishing,* displaying, or possessing a firearm or other dangerous weapon.[12]

Gonzales asserts that the district court erred in determining that his conduct—merely pointing a gun at a store clerk during one robbery, even if done in "a threatening manner"—fits the guidelines' definition of "otherwise used" rather than its definition of "brandished." Gonzales argues that, as the court made a factual finding that he did nothing more than point the gun at the robbery victim and instruct her to open her cash register—and did not find that he expressly threatened the clerk or used the gun in any other manner—the only correct application of those facts to the guidelines yields the conclusion that he "brandished" the gun. Thus, Gonzales reasons that his base offense level should have been increased by five levels rather than six.

No one disputes that Gonzales pointed a firearm at the store clerk while asking her to open the cash register so that he could get the money. But neither does anyone suggest that Gonzales did anything more than "point and demand." The government argues, however, that Gonzales' conduct generated an *implicit* threat sufficient to compel the clerk to give him the money, thereby elevating the level of specific conduct from "brandishing" a firearm to "otherwise using" a firearm. The government relies on *United States v. De La Rosa*,[13] in which we affirmed a district court's finding that a firearm was "otherwise used" when the defendant waved a handgun, expressly threatened those near her, and so intimidated them that she was able to commit the crime.[14] In like manner, the government argues that aiming a weapon in a threatening manner toward a *specific* victim

---

**11.** U.S.S.G. § 2B3.1(b)(2) (1994).

**12.** U.S.S.G. § 1B1.1(c) and (g) (1994) (emphasis added).

**13.** 911 F.2d 985 (5th Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).

**14.** *Id.* at 993. In *De La Rosa* the defendant kidnapper challenged the district court's factual finding that she used a dangerous weapon during the kidnapping, thereby increasing her base level for "otherwise using" a firearm. As is appropriate, we reviewed the district court's factual finding for clear error. We noted that testimony established that the defendant waved a gun during an argument and threatened those around her that anyone going to the police would have to deal with her. We then concluded that, as the defendant's conduct fit the guidelines' definition of "otherwise used," the district court determined correctly that the defendant kidnapper had used a dangerous weapon to commit the kidnapping. Once we determined that it was not clear error for the court to find factually that the defendant used a gun, we did not review the application of this fact to the guidelines.

We distinguish the issue reviewed for clear error in *De La Rosa*—the court's factual determination that the defendant actually used a weapon—from the issue we review de novo here on appeal—the application to the sentencing guidelines of an undisputed factual finding that the defendant pointed a gun. This distinction appears blurred, especially when we consider that the factual finding reviewed in *De La Rosa* turned on the legal definitions of "otherwise used" and "brandished." We are satisfied nonetheless that the distinction is real in that in the instant case it is not the underlying factual finding that we review but the application of that finding to the guidelines.

distinguishes it from mere brandishing.[15] We find the government's position untenable in light of the plain language of the guidelines' definition quoted above.

The government concedes that Gonzales did not verbalize a threat toward the store clerk or anyone else. The government argues nonetheless that when a threat is implicit, and equally coercive, from the conduct of the perpetrator, the threat need not be expressed to elevate the use of a gun from "brandish" to "otherwise used." The government thus admits to no difference between (1) pointing a gun at a clerk and ordering her to open a cash register, and (2) pointing a gun at a clerk and verbalizing "I'll put a bullet in you," or "I'll blow your head off." Thus the government would have us hold that, as there was a possibility that Gonzales would shoot the clerk, the threat was evident and there was no need for Gonzales to verbalize it. The government is therefore contending that Gonzales' conduct is appropriately classified as "otherwise used" a firearm during the robbery.

We find the government's arguments illogical and wholly unpersuasive. We note that the cases cited by the government to support its position interpret "otherwise used" as including situations in which the defendants not only pointed firearms at victims but also explicitly—*expressly*—threatened them. Certainly that distinction is present in *De La Rosa.* We are convinced that were we to broaden "otherwise used" to include incidents in which *implicit* threats may exist, but in which no *explicit* threats have been made, we would unjustifiably expand the out-

er limits of prior law as well as the guidelines' definition of "otherwise used." [16] In essence, "brandishing" would be totally subsumed into "otherwise using" a firearm in every case. After all, "brandished" is defined in the above quoted guidelines provision as "pointed ... in a threatening manner." Thus, we conclude that Gonzales' conduct of pointing a firearm and instructing that the cash register be opened—but doing nothing more—fits precisely the guidelines' definition of "brandished." As such, we cannot avoid the conclusion that the district court erred in increasing Gonzales' base sentence level by the six-level increase for "otherwise using" a firearm.

### 3. *Harmless Error?*

When we calculate the difference in sentence ranges that result from imposing a six-level increase rather than a five-level increase, we demonstrate that the district court's error in holding that Gonzales "otherwise used" a firearm is not harmless. The range of imprisonment for Gonzales' total offense level and criminal history category using the six-level increase is 210–262 months; the range using the five-level increase is 188–235 months. As the district court sentenced Gonzales to the maximum number of months permitted under the range produced by the six-level increase, a sentence that is well above the maximum range produced by a five-level increase, the sentencing error cannot be deemed harmless. The sentence thus must be vacated and remanded for resentencing.[17]

**15.** *See e.g., United States v. Johnson,* 931 F.2d 238, 240 (3rd Cir.1991) (construing guideline definition of "brandish" as denoting a generalized threat rather than a specific threat), *cert. denied,* —— U.S. ——, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). The court in *Johnson* determined that the defendant "otherwise used" a gun when he pointed the gun at the head of one robbery victim at close range, and expressly threatened to "blow her head off." The court concluded that pointing a gun while expressing a specific threat was more than brandishing or displaying a gun, and thus was *justifiably* considered "otherwise using" a gun. *Id. See also United States v. Seavoy,* 995 F.2d 1414, 1422 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993) (holding that when defendants pointed guns at robbery victims and expressly suggest-

ed that one defendant "put a bullet in one of [the victims]," defendants did more than "brandish" a gun).

**16.** We note that an implicit threat is always present whenever a gun is referred to, shown, waved about, or pointed at someone during a robbery. We are *satisfied,* however, that the implicit threat that accompanies every firearm use has already been addressed by the guidelines, which mandates a 5-level sentence increase when a defendant points a firearm at a victim during a robbery.

**17.** Gonzales' overall sentence of 322 months comprised the 262 months maximum for obstructing commerce by robbery while "otherwise using" a firearm (the six-level enhancement) plus

## III

### CONCLUSION

The statutes under which Gonzales was convicted for obstructing commerce by robbery and for knowingly carrying and using a firearm during the commission of a violent crime authorize cumulative convictions and punishment for both offenses. We continue to recognize the legality of imposing cumulative convictions and punishments for offenses that include the same elements when the applicable statutes mandate such results. Thus, we conclude that Gonzales' claim that his convictions violate the Double Jeopardy Clause is without merit. We affirm, therefore, his convictions for both offenses.

With respect to the sentence, however, we conclude that the district court erred in increasing Gonzales' sentence by six levels for "otherwise using" a firearm during a robbery. Given the guidelines' distinguishing definitions of "brandished" and "otherwise used," as well as recent case law interpreting "otherwise used" as conduct that includes brandishing a gun plus *explicit* threats, the fact that Gonzales did nothing more overtly or expressly than to point a gun at the robbery victim and instruct her to open a cash register dictates that the appropriate level by which to increase Gonzales' sentence is the five-level increase for his having "brandished" a firearm. And, as the sentencing ranges determined by using a five-level increase or a six-level increase produce differences that are too great to permit a conclusion that the sentencing error here was harmless, we vacate Gonzales' sentence and remand for resentencing, at which the district court shall use the five-level increase for "brandishing" a firearm during the course of a robbery.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

a mandatory 60 months sentence, to be served consecutively, for using and carrying a firearm during a crime of violence. The maximum possible overall sentence that Gonzales could receive for obstructing commerce by robbery while "brandishing" a firearm (the maximum number of months permitted under the five-level enhancement plus the mandatory 60 months sentence for using and carrying a firearm) would total 295 months.