UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador A. HERNANDEZ,
Defendant–Appellant.

No. 96–1501.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1996.

Decided Feb. 3, 1997.

Michelle A. Leslie, argued, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Elizabeth Cavendish–Sosinski, argued, Madison, WI, for Defendant–Appellant.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Salvador Hernandez was convicted by a jury of conspiracy to kidnap in violation of 18 U.S.C. § 1201(c) and of kidnaping in violation of 18 U.S.C. § 1201(a). The district court denied a motion for judgment of acquittal and later sentenced Mr. Hernandez to 200 months' imprisonment on each count; the sentences on each count are to run concurrently. The court also imposed 5 years of supervised release following imprisonment as well as a $2,500 fine and ancillary monetary penalties. Mr. Hernandez then filed a timely notice of appeal. Before this court, Mr. Hernandez raises three issues. Two of these contentions relate to the findings of guilt; the last relates to the sentence. Following our customary practice, we shall deal first with those matters that relate to the findings of guilt and then consider the sentencing issue.

### 1.

■ Mr. Hernandez first claims that there was insufficient evidence presented to the jury that the victim of the kidnaping was transported unwillingly in interstate commerce. When reviewing a sufficiency of the evidence claim, we view the evidence and make all the inferences in the light most favorable to the government. We shall reverse only if there is no evidence from which the jury could find guilt beyond a reasonable doubt. *United States v. Wilson*, 31 F.3d 510, 513–14 (7th Cir.1994).

Although the circuits have articulated the essential elements of the offense of kidnaping in a variety of formulations,[1] there is no dispute among the parties, nor could there be, that, to sustain a conviction for kidnaping in violation of 18 U.S.C. § 1201(a)(1), the government has the burden of establishing that the victim was transported in interstate commerce against his will. *See Chatwin v. United States*, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946) (reviewing the Federal Kidnaping Act and noting that "the involuntariness of seizure and detention ... is the very essence of the crime of kidnaping").

Mr. Hernandez submits that the government did not establish that the victim was transported in interstate commerce against his will. Mr. Hernandez contends that the testimony of the victim, Salvador Villanueva, was the only evidence presented regarding the victim's unwilling transport from Wisconsin to Illinois. Mr. Hernandez asserts that Villanueva's story about the events leading to his arrival in Illinois from Wisconsin was so implausible that no reasonable person could have found him guilty beyond a reasonable doubt.

The issue of the insufficiency of the evidence was extensively and carefully examined by the district court in its disposition of the motion for judgment of acquittal. Although not all the evidence on the issue of consent supported the position of the government, the district court determined correctly that the record contained ample evidence to support the jury's verdict.

The victim, Villanueva, testified that he had been lured by Mr. Hernandez out of a Milwaukee restaurant into a parking lot on the ruse that he was to participate in a cocaine transaction. As Villanueva stood near the car, two armed men approached and forced Villanueva into the car. Mr. Hernandez then drove the group across the state line into Chicago. During the trip, the armed men held Villanueva at gun point. He was taken into an apartment, beaten, chained

---

1. *See United States v. Sriyuth*, 98 F.3d 739, 751 n. 20 (3d Cir.1996) (describing three elements to be proven: that the victim was knowingly and willfully seized (*i.e.*, forcibly held or carried away against the victim's will); that the victim was held for some benefit or reason; and that the victim was transported in interstate commerce while so seized); *United States v. Osborne*, 68 F.3d 94, 100 (5th Cir.1995) (listing four elements of proof: transportation in interstate commerce; an unconsenting victim; demand of ransom, reward or otherwise; and acts done knowingly and willingly); *United States v. Childress*, 26 F.3d 498, 501–03 (4th Cir.1994) (focusing discussion on elements of nonconsent of victim and the willfulness of the defendant's acts to obtain ransom or another benefit), *cert. denied*, —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *United States v. Davis*, 19 F.3d 166, 169 (5th Cir.1994) (enumerating four elements and citing *United States v. Jackson*, 978 F.2d 903, 910 (5th Cir.1992), *cert. denied*, 508 U.S. 945, 113 S.Ct. 2429, 124 L.Ed.2d 649 (1993)).

to a wall and told he must pay his captors $33,000 for his release.

Mr. Hernandez challenges the sufficiency of Villanueva's testimony on the ground that it is inherently incredible. He points out that Villanueva did not seize arguable opportunities to escape. Mr. Hernandez was arrested when he met Villanueva's wife at a rest stop on a tollway to collect the ransom money. At that time, Mr. Hernandez, who was accompanied by Villanueva, was unarmed and did not have the restraints in his car that Villanueva testified were used to transport him against his will. However, the district court specifically made the finding that, although Villanueva was not the strongest witness, his testimony was not so unreasonable as to be inherently incredible.

We believe that the district court was on solid ground in making its credibility determination. This case hardly presents the sort of situation that confronted our colleagues in the Eleventh Circuit in *United States v. Chancey*, 715 F.2d 543 (11th Cir.1983). In that case, the court characterized the victim's testimony regarding the nonconsensual nature of the interstate transportation as inherently incredible. The extraordinary facts of that case are hardly duplicated here. As the district court noted, the circumstances surrounding the abduction corroborated Villanueva's testimony that he was kidnaped against his will and driven to Chicago. Villanueva's car was found abandoned in front of the restaurant with his wallet and cellular phone in the car. His wife testified that she paged her husband repeatedly during the late afternoon and early evening of the day of the kidnaping; contrary to his practice of returning her page quickly, he never responded. The district court also noted that there was testimony that Villanueva had missed important family obligations during the period of the alleged kidnaping. The court relied as well on the fact that photographs taken of Villanueva after the FBI intervened documented graphically his severe injuries and corroborated that Villanueva had been beaten.

We conclude that there is no merit to Mr. Hernandez' attack on the legal sufficiency of the evidence supporting conviction. The government presented sufficient evidence from which the jury could have concluded that Mr. Hernandez kidnaped Villanueva without his consent and transported him across state lines.

2.

Mr. Hernandez also submits that the district court erred in admitting the evidence of a prior conviction for the possession of cocaine and marijuana. Mr. Hernandez contends that he was unduly prejudiced by the admission of this conviction. He points out that the earlier offense was committed when he was in his late 30s and that, although that offense was his first conviction, the jury may have concluded that his troubles with the law began at an earlier date. He also suggests that evidence of the conviction was unduly prejudicial because the offense was committed during his mature years and a jury might well assess more severely criminal behavior that cannot be excused on the ground of immaturity. Finally, he points out that the prior conviction was for possession of cocaine and marijuana and that the current charges also were related to drugs because the ransom money was meant to pay back a drug deal. The admission of the similar prior conviction would suggest, he submits, his bad character or a willingness to commit this drug-related kidnaping. Mr. Hernandez also notes as well that no cautionary instruction was offered at the time that the testimony of his prior conviction was given.

In pertinent part, Federal Rule of Evidence 609(a)(1) provides that, for purposes of attacking a defendant's credibility, evidence that an accused has been convicted of a felony "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." In *United States v. Mahone*, 537 F.2d 922 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), this circuit articulated a five-part test to guide the district court in the exercise of its discretion in determining whether the probative value of the conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent

history; (3) the similarity between the past crime and the charged crime; (4) the importance of the' defendant's testimony; and (5) the centrality of the credibility issue. *Id.* at 929. We recently repeated these factors in *United States v. Nururdin,* 8 F.3d 1187, 1191–92 (7th Cir.1993), *cert. denied,* 510 U.S. 1206, 114 S.Ct. 1328, 127 L.Ed.2d 676 (1994). We emphasize, however, that these factors remain a guide to the discretion of the district court; we shall intervene only when the record establishes that the district court abused its discretion in deciding to admit the evidence. *See Geitz v. Lindsey,* 893 F.2d 148, 150 (7th Cir.1990) (noting that we review the district court's determination to admit such impeaching evidence under an abuse of discretion standard).

In this case, we discern no abuse of discretion. At the outset, we note that the prior conviction occurred five years earlier and therefore was well within the time period of Rule 609. The district court ultimately determined that the evidence ought to be admitted because of its value in assessing the credibility of the defendant. The court was well aware that there was a similarity between the two crimes, a factor that requires caution on the part of the district court to avoid the possibility of the jury's inferring guilt on a ground not permissible under Rule 404(b).' Nevertheless, the court acted within its discretion when it determined that, given the importance of the credibility issue in this case, evidence of the earlier conviction ought to be admitted. *See United States v. Causey,* 9 F.3d 1341, 1344–45 (7th Cir.1993) (noting the danger of admitting evidence of similar crimes, but holding that a district court may nevertheless determine that the importance of the credibility determination requires admission of the previous conviction), *cert. denied,* —— U.S. ——, 114 S.Ct. 1412, 128 L.Ed.2d 83 (1994). Finally, we note that the court's instruction cautioned the jury that

the conviction was to be considered solely to assess the credibility of the defendant.

### 3.

■ Having found no reversible error in the adjudication of guilt, we now turn to the sentencing issue raised by Mr. Hernandez.

The district court imposed a two-level enhancement for use of a dangerous weapon. *See* U.S.S.G. § 2A4.1(b)(3).[2] Mr. Hernandez asserts that there is no evidence he ever possessed a weapon. He further submits that the testimony of the victim Villanueva that other kidnapers held him at gunpoint was not credible and is not supported by any corroborating evidence. According to Mr. Hernandez, neither the firearms nor the two other men existed. In short, Mr. Hernandez contends that the government did not prove the appropriateness of the dangerous-weapons enhancement and that, therefore, it was clear error for the district court to impose the increase mandated by this provision.

In essence, Mr. Hernandez' objection to the imposition of this enhancement is based on the credibility of the witnesses who testified that his confederates were armed during the kidnaping. As we have pointed out in our discussion of the insufficiency of evidence claim, the jury was free to believe or not to believe Villanueva's testimony. It was able to evaluate the defendant's submission that the gunmen were not present when Villanueva was taken to the tollway rest area, an excursion that ended in Mr. Hernandez' apprehension. The jury believed the victim's story rather than the defendant's version. Indeed, Villanueva's description of the kidnaping strongly supports the district court's decision to impose the § 2A4.1(b)(3) increase.

The two-level increase at issue is employed if "a dangerous weapon is used." If a firearm was discharged or otherwise used, section 2A4.1 applies. *See* U.S.S.G. § 2A4.1, comment. (n.2); *United States v. Gaytan,* 74

---

2. Guideline § 2A4.1 establishes the offense level for kidnaping:

> § 2A4.1. *Kidnapping, Abduction, Unlawful Restraint*
> (a) Base Offense Level: 24
> (b) Specific Offense Characteristics

. . . .
> (3) If a dangerous weapon was used, increase by 2 levels.

U.S.S.G. § 2A4.1 (boldface deleted). (We note that the federal statute and the sentencing guideline employ different spellings of the crime at issue. We have followed the statute.)

F.3d 545, 559 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996). "Otherwise used" means more than brandishing, displaying, or possessing a firearm, the Guidelines establish. U.S.S.G. § 1B1.1, comment. (n.1(g)). As our colleagues in the Third Circuit have pointed out, the language of the guideline and its commentary is not helpful in delineating between the three activities specifically mentioned-brandishing, displaying, possessing—and other uses of a firearm. *See United States v. Johnson,* 931 F.2d 238, 240 (3rd Cir.) (discussing U.S.S.G. § 2A2.2(b)(2) enhancement for aggravated assault), *cert. denied,* 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). In the absence of clear language in the guidelines, the courts have had to draw the necessary distinction. "Brandishing" has been most problematic because, among its definitions, the dictionary gives " 'to shake or wave (a weapon) menacingly.' " *Id.* (quoting Webster's Third New International Dictionary 268 (1976)). The same reference gives as synonyms "flourish" and "wave." *Id.* In making the needed distinction, the circuits that have ruled on the matter are unanimous in holding that there is a qualitative difference between pointing or waving about a firearm and leveling the weapon at the head of a victim with a specific threat, communicated in some fashion, that noncompliance with the demand will result in the discharge of the weapon. For instance, our colleagues in the Eleventh Circuit, interpreting the section before us today, have held that the enhancement is appropriate when the firearm was leveled at the victim's head and she was told that she would be killed if she did not comply. *United States v. Gordon,* 19 F.3d 1387, 1388 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 267, 130 L.Ed.2d 185 (1994). In the view of the Eleventh Circuit, when a dangerous weapon is pointed at a specific person in order to intimidate that person into following specific orders, such activity constitutes more than "brandishing" the firearm and therefore merits the enhancement. *Id.* The Fifth Circuit has reached the same result. In *United States v. De La Rosa,* 911 F.2d 985, 992–93 (5th Cir.1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), the judges of that court determined that the enhancement was justified when the wave of the firearm was accompanied by specific threats to specific people to induce those individuals to take specific action. As we have already noted, the Third Circuit, in interpreting a parallel section of the guidelines, has held that a specific threat, backed up by the display of a firearm in the immediate vicinity of the victim's person, constitutes more than "brandishing." *See Johnson, supra.* Interpreting this same parallel section, the Sixth Circuit had no difficulty in holding that the defendant had "otherwise used" a weapon (a knife) when he held it against the victim's throat and threatened her life. *United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir.1991) (interpreting § 2A2.2(b)(2), offense characteristics of aggravated assault). The Tenth Circuit, on similar facts, interpreted a similar provision in the same manner. *United States v. Roberts,* 898 F.2d 1465, 1470 (10th Cir.1990) (interpreting § 2B3.1(b)(2), offense characteristics of robbery).

We see no reason to depart from the approach adopted by the other circuits. Nor do we have any doubts that the district court was on solid ground in determining that the § 2A4.1(b)(3) enhancement was appropriate here. The district court, to whose determination we must give "due deference," *United States v. Hammick,* 36 F.3d 594, 597 (7th Cir.1994), specifically determined that the firearm was "part and parcel" of the victim's forcible abduction in the car. Accordingly, we must conclude that there was no clear error in imposing the enhancement. *See United States v. McGill,* 32 F.3d 1138, 1143 (7th Cir.1994).

### Conclusion

The district court committed no reversible error. Accordingly, its judgment must be affirmed.

Affirmed.