UNITED STATES of America, Plaintiff-Appellee.

v.

John WOODEN, Defendant-Appellant.

No. 98-4119

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

March 8, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-472-Cr-JLK), James L. King, Judge.

Before TJOFLAT, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

After John Wooden pleaded guilty to carjacking, *see* 18 U.S.C. § 2119, and using and carrying a firearm during and in relation to a crime of violence, *see* 18 U.S.C. § 924(c), the district court sentenced him to 120 months imprisonment on the carjacking count and a mandatory consecutive 60 month term on the firearm count. On appeal, Wooden challenges only a six-level enhancement under U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(B) for "otherwise us[ing] a firearm" that went into the calculation of his 120-month sentence for the carjacking count. Wooden contends that instead of applying the six-level enhancement, the district court should have enhanced his offense level by only five points under § 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm.[1]

The underlying facts are not disputed. On January 27, 1997, at about 8:00 p.m., Wooden robbed a man at an automatic teller machine in Miami, Florida. He stole $20 cash and the victim's automobile. In the

---

[1] If Wooden were to prevail on this argument, his adjusted offense level would be 25 rather than 26, which when combined with his criminal history category of VI, yields a sentence range of 110-137 months rather than the 120-150 month range used based on adjusted offense level 26.

course of the robbery, Wooden held a .9 millimeter semi-automatic handgun about one-half inch from the victim's forehead and pointed it at him.

The district court found that Wooden's conduct justified the six-level enhancement for "otherwise us[ing]" a firearm. We review *de novo* the district court's interpretation of the words used in the Sentencing Guidelines. *United States v. Vincent,* 121 F.3d 1451, 1454 (11th Cir.1997). Section 2B3.1(b)(2) establishes a hierarchy of culpability for varying degrees of involvement of a firearm in a robbery offense. If a firearm is "brandished, displayed, or possessed," a five-level enhancement is required. U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(C). If a firearm is "otherwise used," a six-level enhancement is required. *Id.* § 2B3.1(b)(2)(B). If a firearm is discharged, a seven-level enhancement is required. *Id.* § 2B3.1(b)(2)(A). The instant case turns upon where the line is drawn between "brandished, displayed, or possessed," and "otherwise used." Wooden contends that "otherwise used" was meant to encompass only uses of a firearm, short of discharge, that inflict physical injury on the victim—for example, pistol-whipping or bludgeoning. Wooden also points out that the applicable guidelines provisions do not contain any sort of explicit proximity test; in other words, he argues that the closeness of the weapon to the victim should not make any difference in whether it is deemed to have been "otherwise used" or "brandished, displayed, or possessed." On the other hand, the government contends (and the district court held) that pointing a gun at someone at one-half inch range constitutes something more than brandishing, displaying, or possessing.

This is a question of first impression in this Circuit.[2] We can find some assistance in the commentary to the Sentencing Guidelines.[3] " 'Brandished' ... means that the weapon was pointed or waved about, or displayed in a threatening manner." U.S. Sentencing Guidelines Manual § 1B1.1 application note 1(c). " 'Otherwise used' ... means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id.* 1B1.1 application note 1(g).

We hold that the instant facts constitute an "otherwise use" of the weapon, and not merely a brandishing thereof. Wooden pointed the handgun at a specific victim, holding the gun one-half inch from the victim's forehead. Under these circumstances, we hold that Wooden has "otherwise used" the firearm; in other words, in the language of the definitions in the Guidelines, his conduct was more than brandishing; it was more than merely pointing or waving the weapon about in a threatening manner.

In so holding, we follow the weight of authority. In *United States v. Johnson,* 931 F.2d 238 (3d Cir.), *cert. denied,* 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), the Third Circuit held that the defendant's conduct constituted an "otherwise use," and not merely a brandishing. There the defendant pointed a gun at his victim from a distance of one or two feet and ordered her not to start her car or he would blow her head off. The court distinguished that situation, involving the leveling of a gun at the head of a specific victim at

---

[2]In *United States v. Omar,* 16 F.3d 1168, 1170 (11th Cir.) (per curiam), *modified on reh'g,* 24 F.3d 1356 (11th Cir.1994), we noted the application of the then-four-level increase for "otherwise us[ing]" a firearm in determining the sentence of a defendant who had pointed a gun at an assistant manager's head during a bank robbery. However, the propriety of this four-level increase, as compared to the then-three-level increase for brandishing, displaying, or possessing, was not one of the issues raised on appeal in *Omar.* Similarly, in *United States v. Vincent,* 121 F.3d 1451, 1455 (11th Cir.1997), the defendant had committed a robbery in which he pressed a hard object against the victim's side, intending to simulate a weapon of some sort. We affirmed the three-level enhancement that applies to brandishing, displaying, or possessing a dangerous weapon, *see* U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(E), noting that fake weapons are treated as equivalent to real ones for purposes of this offense level enhancement. The government in *Vincent* did not argue, and therefore we did not consider, whether the higher "otherwise used" enhancement might apply to defendant's conduct in pressing a weapon-like object against the victim.

[3]Section 2B3.1 application note 1 provides that the definitions in the commentary to § 1B1.1 are controlling in the § 2B3.1 context.

close range from brandishing, which the court indicated would denote a generalized rather than a specific threat. Other cases are almost identical to *Johnson. See United States v. Fuller,* 99 F.3d 926 (9th Cir.1996) (holding that the following conduct constituted "otherwise using," and not merely brandishing: the defendant pressed the gun to the head of the bank teller, and at one point threatened to kill her if she did not do as she was told); *United States v. Hamilton,* 929 F.2d 1126 (6th Cir.1991) (same with respect to the following conduct: the defendant was holding a knife against the victim's throat, threatening to kill her and her children).

Although *Johnson, Fuller* and *Hamilton* all involve conduct almost identical to Wooden's conduct in the instant case, it is true that those cases also involved an explicit threat. Although the threat in the instant case was not verbalized, we conclude that Wooden's conduct in pointing and holding a semi-automatic weapon one-half inch from his victim's head is equally coercive and threatening. Our conclusion in this regard is supported by cases in both the Eighth and the Tenth Circuits holding that conduct identical to the conduct in the instant case rose to the level of "otherwise using" the weapon, and was not merely brandishing it. *See United States v. Elkins,* 16 F.3d 952 (8th Cir.1994) (holding that the following conduct constituted "otherwise using" the weapon and was not merely brandishing: placing a knife against the victim's throat to facilitate cooperation with a robbery demand); *United States v. Roberts,* 898 F.2d 1465 (10th Cir.1990) (same where defendant came up behind the victim using an automatic teller machine, and, with a knife in his right hand, put his right arm around the victim's neck and demanded money).[4]

---

[4]*Hamilton, Elkins,* and *Roberts* involved knives, rather than firearms. Subsections (D) and (E) of § 2B3.1(b)(2) set up the same dichotomy—between "brandished, displayed, or possessed" and "otherwise used"—for "dangerous weapons" that subsections (B) and (C) set up for firearms, so these cases are still persuasive.

For the foregoing reasons, we conclude that Wooden's pointing the gun at the victim and holding it one-half inch from the victim's forehead constituted more than brandishing the gun, and thus qualified for the § 2B3.1(b)(2)(B) enhancement for "otherwise using" the gun.[5]

AFFIRMED.[6]

[5]To the extent that *United States v. Gonzales,* 40 F.3d 735 (5th Cir.), *cert. denied,* 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995), is inconsistent with our holding today, we decline to follow it. Although that opinion seems to reject without discussion the distinction between pointing a gun in a generally threatening manner and pointing the gun and implicitly threatening a specific victim, *id.* at 739-40, we note that the implicit threat in that case did not approach the level of the one in this case. *United States v. Matthews,* 20 F.3d 538 (2d Cir.1994), might also be thought to provide some support to Wooden's view. There the Second Circuit held that pointing a gun and explicit threats amounted only to brandishing, and did not rise to the level of "otherwise using" the gun. However, that case apparently involved only generalized threats, and in any event the opinion did not discuss the difference between a generalized threat and a clear threat to a specific victim. In this regard, the opinion cited *United States v. Roberts, supra,* as factually distinguishable. *Id.* at 554. As noted above, the instant case and *Roberts* are factually identical, and thus we gather the *Matthews* court would have considered the instant case also distinguishable. Moreover, the holdings in *Matthews* and *Gonzales* would seem to be in tension with the holdings in *United States v. Burton,* 126 F.3d 666, 678-79 (5th Cir.1997), and *United States v. Seavoy,* 995 F.2d 1414, 1422 (7th Cir.), *cert. denied,* 510 U.S. 954, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993).

[6]For his argument that the six-level enhancement should apply only when there is physical injury caused by a use of the weapon other than discharge, Wooden relies heavily on dicta in the Supreme Court's opinion in *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). In *Smith,* the Court confronted the meaning of the word "use" in 18 U.S.C. § 924(c), i.e., as a substantive element of a statutory offense. The Court briefly analogized to U.S. Sentencing Guidelines § 2B3.1(b)(2). 508 U.S. at 231-32, 113 S.Ct. 2050. The Court said that "it is perfectly reasonable to construe § 2B3.1(b)(2)(B) as including uses, such as ... bludgeoning." *Id.* at 232, 113 S.Ct. 2050. However, the Court did not suggest that "otherwise used" is limited to bludgeoning or infliction of physical injury. The passage from *Smith* does not speak to the issue before us.