6A C.J.S. *Attempt or Offer* § 65 (1975). In this case, it is undisputed that, in both robberies discussed by the majority, defendant pointed his shotgun at a teller and demanded money. I respectfully disagree with the majority's statement, "There is no claim in this case that the defendant threatened to use the firearm with regard to either of the tellers or the customer." Surely, by pointing the gun at the tellers and demanding money, defendant intended to convey the threat of dire consequences should they fail to comply; and one would certainly expect that the tellers would have a "well grounded apprehension of personal injury" under the circumstances. Defendant's actions fulfill all of the elements of common law criminal assault. Furthermore, they fall within the fully consistent rationale of *Yelverton*: "whether a gun . . . was pointed at a specific person in an effort to create fear so as to facilitate compliance with a demand, and ultimately to facilitate the commission of the crime." 197 F.3d at 534.

Because I believe that the district court correctly found that defendant had "otherwised used" his firearm, I respectfully dissent.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0403P (6th Cir.)
File Name: 00a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.                                         No. 99-1783

ERIC JOHN MOERMAN,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00024—Robert Holmes Bell, District Judge.

Argued: October 26, 2000

Decided and Filed: November 22, 2000

Before: GUY and NORRIS, Circuit Judges; HOOD,
District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Frank E. Stanley, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**ON BRIEF:** Tonya L. Krause-Phelan, THE KRAUSE LAW FIRM, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

GUY, J., delivered the opinion of the court, in which HOOD, D. J., joined. NORRIS, J. (pp. 6-8), delivered a separate dissenting opinion.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Defendant, Eric John Moerman, waiving indictment, entered a guilty plea to an information charging three counts of armed bank robbery in violation of 18 U.S.C. § 2113. The single issue presented in this appeal is whether the district court correctly imposed a six-level enhancement for "otherwise using" a firearm in the commission of two of those bank robberies. Defendant contends that he only "brandished" the firearm and therefore should have been subject to only a five-level enhancement on each of the two counts. Our *de novo* review convinces us that only the five-level enhancement should have been imposed, and we reverse and remand for resentencing.

## I.

There is no dispute that the facts as set forth in the presentence report accurately describe the defendant's conduct in connection with the two bank robberies at issue in Counts II and III.

On January 25, 1999, defendant entered the Michigan National Bank armed with a rifle that had a scope. He approached a teller while a customer was still at the window. Defendant cut in front of the bank customer and used the barrel of the rifle to push him aside. Defendant instructed him to move, stating: "Get out of the way, this doesn't concern you." Defendant then pointed the rifle at the teller

(or other weapon) was pointed at a specific person in an effort to create fear so as to facilitate compliance with a demand, and ultimately to facilitate the commission of the crime. *See, e.g., Hernandez*, 106 F.3d at 741; *Fuller*, 99 F.3d at 927; *Gordon*, 19 F.3d at 1388.

*United States v. Yelverton*, 197 F.3d 531, 534 (D.C. Cir. 1999), *cert. denied*, 120 S. Ct. 1255 (2000) (footnote omitted).

Moreover, effective on November 1, 2000, the application note relied upon by the majority has been amended to eliminate any reference to pointing of the weapon. Instead, it now provides,

"Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

U.S.S.G. § 1B1.1, comment. (n.1(c)) (2000). While I am not suggesting that an application note not in effect at the time of sentencing controls the resolution of this issue, it does lend support to the less expansive reading of "brandishing" as summarized in *Yelverton*.

In my view, a helpful test for determining when use of a firearm progresses from "brandishing" to "otherwise using" can be found in the common law definition of criminal assault:

[T]here must be the commencement of an act, which, if not prevented, would produce a battery; and there must be such an attempt or offer . . . as will convey to the mind of the person assaulted a well grounded apprehension of personal injury, and within such distance that harm may follow it if carried out.

————————

**DISSENT**

————————

ALAN E. NORRIS, Circuit Judge, dissenting. This appeal illustrates how the Sentencing Guidelines frequently draw distinctions without differences. In this case, they seek to distinguish "brandishing" from "otherwise using." The latter term is unhelpfully defined as something "more than brandishing" yet short of discharging the firearm in question. U.S.S.G. § 1B1.1, comment. (n.1(g)) (1998). As the majority observes, the Application Notes for the version of the Guidelines used in this case define "brandishing" to include pointing the firearm and displaying it in a threatening manner.

However, other circuits have found that pointing firearms in a threatening manner can constitute "otherwise using" based upon the proximity of the weapon to the victim. *See, e.g., United States v. Wooden*, 169 F.3d 674, 676 (11th Cir. 1999) (gun held a half-inch from the victim's forehead is more than brandishing) (collecting cases). The District of Columbia Circuit has recently summarized the majority view of "otherwise using" in these terms:

> [W]here a dangerous weapon is pointed at a person and some further verbal threat or order accompanies the pointing of the weapon to facilitate commission of the underlying crime, an enhancement for the use of the weapon is justified. *See, e.g., United States v. Wooden*, 169 F.3d 674, 676-77 (11th Cir. 1999); *United States v. Gilkey*, 118 F.3d 702, 705 (10th Cir. 1997); *United States v. Hernandez*, 106 F.3d 737, 741 (7th Cir. 1997); *United States v. Fuller*, 99 F.3d 926, 927 (9th Cir. 1996); *United States v. Elkins*, 16 F.3d 952, 953-54 (8th Cir. 1994); *United States v. Johnson*, 931 F.2d 238, 240-41 (3d Cir. 1991); *United States v. De La Rosa*, 911 F.2d 985, 992 (5th Cir. 1990). The underlying rationale of the majority view suggests that the key consideration is whether a gun

and demanded: "Give me your money." The bank teller gave defendant $1,272.

On February 10, 1999, defendant robbed the Standard Federal Bank. He was wearing a jacket with the hood pulled over his head and a bandana that covered the bottom portion of his face. During this robbery, defendant possessed a shotgun. He approached the teller while a customer was still at the window and shoved the customer away with his hand or forearm. Defendant then pointed the shotgun at the teller and demanded: "Give me all your money – all of it – give it to me." The bank teller gave defendant $3,625.

**II.**

We review the district court's application of the sentencing guidelines *de novo* because it presents a purely legal question. *See United States v. Kushmaul*, 147 F.3d 498, 500 (6th Cir. 1998). The United States Sentencing Guidelines provide in relevant part for the following increase in the base offense level for robbery to account for the characteristics of the specific offense:

> (A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished, displayed, or possessed, increase by **5** levels; . . . .

U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2B3.1(b)(2) (1998). The guidelines define "brandished" and "otherwise used" in U.S.S.G. § 1B1.1, comment. (n.1). The guidelines explain that: "'Brandished' with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner." *Id.* at (n.1(c)). "'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id.* at (n.1(g)).

As we noted in *Kushmaul*, 147 F.3d at 500, these definitions are "not particularly useful ones." Nonetheless, they represent our starting point and, in our view, are as far as we need to go in resolving this issue. It is clear that the scheme of the sentencing guidelines calls for three different degrees of increase in the base offense level depending upon the nature of the use of the firearm during the commission of the crime. While there was no discharge of the firearm here, there clearly was at least brandishing of the firearm during both robberies. Thus, the question boils down to whether the use of the firearm somehow went beyond brandishing, as that term is defined by the guidelines. We conclude that it did not. The concept of brandishing includes both pointing the firearm and pointing it in a threatening manner. That is precisely what was done in connection with the one bank robbery. With regard to the other bank robbery, defendant also moved a customer aside with the barrel of the firearm. This additional conduct by defendant was not accompanied by a threatening statement, however. Rather, defendant made a nonthreatening statement to the effect that the customer should move out of the way because this matter did not concern him.

Although the government cites to a number of cases in which an "otherwise used" enhancement was upheld, none of the cases support its position here. *See, e.g., United States v. Rucker*, 178 F.3d 1369, 1371 (10th Cir.), *cert. denied,*120 S. Ct. 386 (1999); *United States v. Wooden*, 169 F.3d 674, 676 (11th Cir. 1999); *United States v. Gilkey*, 118 F.3d 702, 705 (10th Cir. 1997); *United States v. Johnson*, 931 F.2d 238, 240 (3d Cir. 1991). In each of the cases relied upon by the government, the defendant's actions and/or statements directly threatened an individual with the use of the firearm if the person being threatened did not comply with the defendant's demands. There is no claim in this case that the defendant threatened to use the firearm with regard to either of the tellers or the customer.

We attempt to draw no bright line, realizing that under our *de novo* review each of these cases must be decided on its

own facts. Here, we are comfortable with the conclusion that the conduct of the defendant did not go beyond brandishing the weapon.

**REVERSED** and **REMANDED** for the limited purpose of recalculating the sentence using the five-point increase, rather than the six-point increase, and for resentencing in accordance with the new guideline range.