In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2022

UNITED STATES of AMERICA,

Plaintiff-Appellee,

v.

DWIGHT WARREN,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 397-1--William T. Hart, Judge.

ARGUED DECEMBER 11, 2001--DECIDED February 8, 2002


Before BAUER, RIPPLE and ROVNER, Circuit
Judges.

RIPPLE, Circuit Judge.  In January 2001,
Dwight "Scoop" Warren entered a guilty
plea to one count of armed bank robbery,
see 18 U.S.C. sec. 2113(a) & (d), and was
sentenced to 120 months of imprisonment,
three years of supervised release, he
received a $100 special assessment, and
was ordered to pay $66,684 in
restitution. On appeal, Mr. Warren
challenges the imposition of a four-point
upward adjustment under U.S.S.G. sec.
2B3.1(b)(2)(D) because he "otherwise
used" a dangerous weapon. For the reasons
set forth in the following opinion, we
affirm the judgment of the district
court.

I

BACKGROUND

Early one morning in November 1998, Mr.
Warren and an accomplice drove to a
branch of St. Paul Federal Bank in
Chicago. When they arrived at the bank,
Mr. Warren exited their van and entered
an enclosed ATM booth. As he waited there
for bank employees to arrive for work,
Mr. Warren placed a mask over his face
and donned a pair of gloves.

A bank teller soon arrived, and Mr.

Warren produced what appeared to be a silver handgun and ordered her to enter the bank. (Mr. Warren later stated that he used a silver cigarette lighter shaped like a gun rather than an actual firearm, although no lighter was ever recovered.) Once inside, Mr. Warren instructed the teller to turn off the entry alarm. The teller recalled that Mr. Warren then grabbed her by the arm, placed the weapon in her back, ordered her into the vault room, and said that he didn't want to hurt her. After the teller opened the cash drawer, Mr. Warren restrained her by taping her wrists and ankles with duct tape. He then emptied the cash drawer of over $66,000 and placed the money in a gym bag. Mr. Warren left the bank through a rear exit and took off with his accomplice in the waiting getaway van.

For almost two years this crime remained unsolved, but a jailhouse informant's tip led investigators to Mr. Warren. Eventually, he pleaded guilty to one count of armed bank robbery, see 18 U.S.C. sec. 2113(a) & (d).

At sentencing, the district court calculated Mr. Warren's base offense level to be 20, see U.S.S.G. sec. 2B3.1(a), with an additional two points for taking the property of a financial institution, see sec. 2B3.1(b)(1), another two points for physical restraint of the teller, see sec. 2B3.1(b)(4), and yet another two points because the loss was between $50,000 and $250,000, see sec. 2B3.1(b)(7)(C). The district court also assessed two points for obstruction of justice, see U.S.S.G. sec. 3C1.1, but reduced the adjusted offense level by three for acceptance of responsibility under U.S.S.G. sec. 3E1.1. Finally, the district court added four points under sec. 2B3.1(b)(2)(D) because Mr. Warren "otherwise used" a dangerous weapon. Mr. Warren's total offense level was therefore 29, which, combined with his Category III criminal history, yielded a guideline range of 108-135 months. The district court sentenced Mr. Warren to a term of 120 months of imprisonment.

II

DISCUSSION

Mr. Warren submits that he should not have received a four-point upward

adjustment under sec. 2B3.1(b)(2)(D) for otherwise using a dangerous weapon. He contends that, at most, his conduct constituted mere "brandishing" of a dangerous weapon. Specifically, Mr. Warren highlights that the parties dispute whether his weapon actually made contact with the teller's back; he describes his conduct as "holding the gun in the vicinity of the teller's back." Appellant's Br. at 9. We review the application of sec. 2B3.1(b)(2) for clear error. See United States v. Seavoy, 995 F.2d 1414, 1421-22 (7th Cir. 1993).

Whether Mr. Warren touched the teller's back with the gun or whether he simply came close to touching her is not an important distinction for purposes of determining the applicability of the enhancement. Although something more than a general display of a weapon is necessary to constitute use under subsection (b)(2)(D), see Seavoy, 995 F.2d at 1422, physical contact between the weapon and the victim is not a prerequisite to finding that the defendant "otherwise used" a dangerous weapon, see, e.g., United States v. Wooden, 169 F.3d 674, 676-77 (11th Cir. 1999) (weapon was "otherwise used" when held one-half inch from victim's head); United States v. Johnson, 931 F.2d 238, 240-41 (3d Cir. 1991) (weapon was "otherwise used" when held "at close range").

Moreover, Mr. Warren admitted during his plea colloquy that he intimidated his victim with the weapon and also admitted that he threatened her by warning that he "didn't want to hurt her." Tr.I at 14-15, 26. We have affirmed "otherwise used" adjustments when pointing a weapon at a specific victim created a personalized threat of harm. See United States v. Taylor, 135 F.3d 478, 483 (7th Cir. 1998); United States v. Hernandez, 106 F.3d 737, 741 (7th Cir. 1997). The district court reasonably could have found that Mr. Warren's behavior did constitute such a personalized threat. Mr. Warren's argument in his brief that the factual situation here does "not constitute an increased level of threat beyond the level necessary to instill fear in a reasonable person," Appellant's Br. at 9, is conclusory and does not demonstrate why the district court was clearly erroneous in assessing the facts

as it did.

In the alternative, Mr. Warren submits that the district court erred in relying on the presentence investigation report ("PSR"), which recounts that he "poked" the teller with his gun. Mr. Warren maintains that the PSR version of the crime should be deemed unreliable because the Government did not produce at sentencing either the teller or the investigating FBI agent. Both had given statements that constitute a large portion of the PSR. At sentencing, Mr. Warren made clear that this reliability argument centered on only one disputed fact: whether or not he actually touched the teller with the weapon. His counsel stated: "Mr. Warren certainly acknowledges that he intimidated her with it, but he denies that he touched her with it." Tr.I at 26. However, it is irrelevant whether the district court credited the teller's story that there was actual physical contact between the gun and her back. The district court could have imposed the "otherwise used" points solely by relying on Mr. Warren's own admission, through counsel, that he had intimidated the victim with a weapon, id., in a situation in which such intimidation clearly constituted a personalized threat.

Conclusion

The district court did not commit clear error in determining that the sentence should include an enhancement because a dangerous weapon was "otherwise used." Accordingly, the judgment of the district court is affirmed.

AFFIRMED