NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2012
Decided October 5, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1573

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 3:11-CR-30100-001-DRH |
| HENRY C. DAWSON,<br>    *Defendant-Appellant*. | David R. Herndon,<br>*Chief Judge*. |

**O R D E R**

Henry Dawson pleaded guilty to being a felon in possession of a gun. The district court sentenced him to four years' imprisonment—twice the applicable guidelines range. Dawson appeals, arguing that his sentence was unreasonable. We affirm.

In September 2010, a police officer on patrol in East St. Louis saw Dawson standing behind his car with the trunk open. Dawson closed the trunk when he saw the officer. This piqued the officer's suspicion, so he checked the car's registration and discovered that the driver's license of the car's owner had been suspended. Circling around the block, the officer found Dawson driving away. When Dawson made two right turns without

signaling, the officer pulled him over, patted him down, and discovered a small amount of marijuana in his pocket. After arresting Dawson for the marijuana, the officer searched his car. In a black plastic bag in the trunk, he discovered a loaded revolver and 1.8 grams of crack divided among three plastic bags. Dawson was 62 years old at the time of his arrest.

Dawson, who had a prior felony conviction, pleaded guilty to unlawfully possessing a firearm. *See* 18 U.S.C. § 922(g)(1). A probation officer calculated a sentencing range of 18 to 24 months, based on a total offense level of 15 (base offense level of 14, plus 4 levels for possessing the revolver in connection with another felony offense (crack possession), *see* U.S.S.G. § 2K2.1(b)(6)(B), minus 3 levels for accepting responsibility, *see* U.S.S.G. § 3E1.1(a), (b)) and a category I criminal history (based on a single criminal history point for a 2005 crack conviction but excluding more than a dozen earlier convictions over 35 years that were deemed too old—including armed robbery, battery, unlawful use of a weapon, possession of crack, and delivery and possession of cannabis). *See* U.S.S.G. § 4A1.2(e). The PSR acknowledged that Dawson had described a difficult childhood but identified no factors warranting a departure from this range.

The district court agreed with the PSR's guidelines calculations, but decided that the guidelines underrepresented Dawson's criminal history. Despite his advanced age, Dawson showed "no sign of slowing down from his lawless lifestyle" and posed a significant danger to the public. The court gave little credit to Dawson's assertion that he had tried his best to stay out of trouble, finding instead that Dawson had "a terrible resume of crimes against the public," was "a de facto career criminal," and had "no respect for the law," as demonstrated by his steady and lengthy criminal history—including a recent incident in which he was pulled over for a traffic stop, ignored the officer's request to produce his driver's license, and continued to talk on his cellular phone until he was removed from his vehicle. Concluding that a within-guidelines sentence would be insufficient to protect the public, *see* 18 U.S.C. § 3553(a)(2)(C), or deter Dawson from committing future crimes, *see id*. § 3553(a)(2)(B), the court sentenced him to 48 months—a sentence that corresponds to criminal history category VI, based on the 15 criminal history points that would have applied if all of Dawson's 13 earlier convictions had been assigned points.

Dawson appeals, arguing that his above-guidelines sentence is unreasonably high. He first asserts that the district court miscalculated his criminal history category when computing the guidelines range that would apply if all of his prior convictions were counted. The court, he says, overlooked a provision of the sentencing guidelines—U.S.S.G. § 4A1.1(c)—under which no more than 4 total criminal history points may be imposed for all sentences of less than 60 days. If the district court had applied § 4A1.1(c)'s 4-point limit, Dawson contends, 5 of his convictions would have been excluded and he would have

received only 10 criminal history points, resulting in a category V criminal history and an advisory sentence of only 37 to 46 months.

This argument is unpersuasive in light of the district court's concern that the number of Dawson's prior offenses demonstrated a pattern of lawlessness unaccounted for by the guidelines. Section 4A1.3(a)(2)(A) of the guidelines expressly authorizes courts to consider prior sentences not used in computing a defendant's criminal history category as the basis for an upward departure:

> § 4A1.3. Departures Based on Inadequacy of Criminal History Category (Policy Statement)
>
> (a) Upward Departures.—
>
> (1) Standard for Upward Departure.—If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.
>
> (2) Types of Information Forming the Basis for Upward Departure.—The information described in subsection (a) may include information concerning the following:
>
> (A) Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).

As the Fourth Circuit has noted, this guideline applies to sentences that are excluded by § 4A1.1(c)'s four-point limit. *See United States v. Wilson*, 913 F.2d 136, 139 (4th Cir. 1990)*; see also United States v. Leonard*, 50 F. App'x 949, 952 (7th Cir. 2002) ("The guidelines . . . plainly contemplate that a defendant's criminal history category may be increased based on the district court's consideration of convictions not counted due to the four point limitation of Section 4A1.1(c)."). Although the district court did not specifically address § 4A1.1(c) at sentencing, in explaining its decision to impose an above-guidelines sentence, the court noted that "[i]f one were to . . . award points for *all those crimes that do not get awarded points*, we would be looking here at a sentence somewhere in the range of . . . 41 to 51 months." (emphasis added) We can infer, based on this rationale, that the district court's failure to apply § 4A1.1(c) was not an oversight but an extension of its decision to treat Dawson's entire criminal history as relevant—a decision that would have been frustrated by excluding from consideration many of the less serious offenses that the court nevertheless saw as evidence of a pattern of lawlessness.

Dawson also argues that the record does not support the district court's finding that his criminal history was underrepresented because many of his prior convictions are temporally remote or do not otherwise suggest likely recidivism. Dawson notes that the guidelines allow district courts to depart on the basis of uncounted convictions only if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Although he acknowledges that courts no longer need to adhere to § 4A1.3 when imposing above-guidelines sentences based on defendants' criminal histories, Dawson points out that courts must still consider the policy judgments embodied in the guidelines. Section 4A1.3, he suggests, embodies a presumption that older convictions are not predictive of recidivism and should be considered only when they indicate that a defendant is especially likely to reoffend. He maintains that his own crimes suggest no such risk and emphasizes that he committed most of these crimes—including the only violent ones—decades ago.

This argument is unavailing because the district court explained that even Dawson's "not so serious" convictions were "indicative of a person who doesn't care to follow the rules." Nonserious and outdated convictions may serve as the basis for an upward departure when they are evidence of a "lifelong pattern of criminality." *See United States v. Walker*, 98 F.3d 944, 947–48 (7th Cir. 1996) (shoplifting and pimping convictions "could be considered for the limited purpose of establishing the incorrigible character of the defendant's criminal propensities"); *see also United States v. Joshua*, 40 F.3d 948, 953 (7th Cir. 1994) (departure on basis of old convictions may be appropriate even when convictions are for nonserious crimes dissimilar to current offense); *United States v. Connor*, 950 F.2d 1267, 1274–75 (7th Cir. 1991). In the same vein, we have held that it is not unreasonable for a district court to consider a defendant's numerous minor offenses as evidence of a pattern of disregard for the law when imposing an above-guidelines sentence. *See United States v. Jackson*, 547 F.3d 786, 794 (7th Cir. 2008).

In a related argument, Dawson maintains that the district court failed otherwise to distinguish him from the mine run of defendants whose old convictions are excluded from consideration by the guidelines' temporal limits. The district court, he asserts, ignored the fact that his crimes had tapered off in recent years, unreasonably finding that he was dangerous and likely to recidivate.

The record belies Dawson's assertion that the district court did not explain how he differed from other offenders with similar criminal histories. While Dawson is correct that an above-guidelines sentence is more likely to be reasonable when based on factors particular to an individual defendant, *see United States v. Aljabari*, 626 F.3d 940, 952 (7th Cir. 2010); *Jackson*, 547 F.3d at 792–93, the district court explained Dawson's sentence with

reference to his characteristics and the § 3553(a) factors, reasoning that his possession of a gun in connection with drug trafficking created a special danger to the public and noting that his continued involvement with drugs and guns at age 62 demonstrated that he is less susceptible to deterrence than the typical offender (a fact that may be explained in part by his age itself, *see* RICHARD A. POSNER, AGING AND OLD AGE 133 (Chicago 1995)). This was not unreasonable; as we have noted, even the elderly can pull a trigger. *See United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006).

Finally, Dawson asserts that the district court's discussion of the circumstances of his 2005 crack conviction reflects an excessive reliance on this incident. Although he didn't produce his license or get off the phone when he was pulled over, Dawson notes that there is no evidence that he resisted arrest or acted violently. The sentencing transcript, however, does not suggest that the court placed any particular weight on this incident in determining Dawson's sentence. Rather, the court briefly recounted the event in explaining its skepticism toward Dawson's claim that he had "tried his best" to stay out of trouble.

AFFIRMED.