In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 19-2896

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW E. MOULTRIE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:18-cr-40055-SLD-1 — **Sara Darrow**, *Chief District Judge.*

_____

ARGUED MAY 13, 2020 — DECIDED SEPTEMBER 16, 2020

_____

Before RIPPLE, BARRETT, and BRENNAN, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Matthew Moultrie was charged with, and pleaded guilty to, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The probation office's final presentence report calculated Mr. Moultrie's offense level at 21; this calculation included enhancements for possessing a firearm with an obliterated serial number, for discharging his firearm in a manner that endangered others, and for obstructing justice by both flee-

ing and engaging in a standoff with law enforcement. The presentence report also determined that Mr. Moultrie had a criminal history category of III. The resulting guidelines range was 46 to 57 months' imprisonment.

At sentencing, the district court employed Mr. Moultrie's offense level and criminal history category as baselines. However, the court determined that, applying the factors set forth in 18 U.S.C. § 3553(a), Mr. Moultrie's offense level did not account adequately for the dangerous situations that his actions had created, nor did it account for his post-arrest behavior, which included attempting to dissuade witnesses from testifying against him. According to the court, an offense level of 23, as opposed to 21, was more appropriate. Additionally, the court determined that Mr. Moultrie's criminal history category did not account for the rapid escalation in his criminal activity or his risk of recidivism. The court believed a criminal history category of IV better captured the risk that he posed. These levels yielded a guidelines range of 70 to 87 months, and the court imposed a sentence of 84 months.

On appeal, Mr. Moultrie challenges only the substantive reasonableness of his sentence. Concluding that the district court acted well within its discretion, we now affirm the judgment.

# I

## BACKGROUND

### A.

From June 2017 until September 2018, Mr. Moultrie engaged in a series of increasingly serious criminal activities. He first was arrested for, and pleaded guilty to, possession

of controlled substances (marijuana and Xanax); he was sentenced to 180 days in jail, 24 months' probation, and community service. Mr. Moultrie was on probation for the possession offense when, in February 2018, he was arrested and charged in state court with armed violence, possession of a firearm, and possession with intent to deliver ten to thirty grams of cannabis. While out on bond for his state armed-violence charge, he committed the federal offense at issue here.[1] Specifically, on September 14, 2018, Mr. Moultrie was the passenger in a Ford Taurus driven by Shawn Housby. The Taurus passed another car driven by Julienne Conner and in which Nastassia Waters was a passenger; Mr. Moultrie knew both Conner and Waters. Mr. Moultrie fired five to six gunshots at Conner's car. A stray bullet struck a different car, and several residents in the area called the police to report the shooting.

Officer Miles of the Rock Island Police Department located a car matching the description of the Ford Taurus and attempted to stop it. The car, however, proceeded to Housby's residence; as they approached the house, Housby slowed down, and Mr. Moultrie ran out of the car and into the house. Officers apprehended Housby and ordered the individuals inside the house to come out; none of them obeyed the commands. Police cars surrounded the residence, and, after a two-hour standoff, Mr. Moultrie and others exited the house. A subsequent search of the residence uncovered two handguns. The serial number of one of the guns had been

---

[1] The following facts are taken from Mr. Moultrie's plea colloquy and the description of the offense in Mr. Moultrie's second revised presentence report. *See* R.18, R.29.

obliterated, and Mr. Moultrie's fingerprints were found on that gun.

**B**.

Mr. Moultrie was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty, and the probation department prepared an initial presentence report ("PSR") filed on May 21, 2019.[2] The PSR calculated Mr. Moultrie's offense level at 19; this offense level reflected an increase of 4 levels for possessing a firearm with an obliterated serial number under U.S.S.G. § 2K2.1(b)(4)(A) and an increase of 4 levels for Aggravated Discharge of a Firearm under U.S.S.G. § 2K2.1(b)(6) for shooting at an occupied car.

A revised PSR was filed on June 18, 2019. It included the offense-related increases in the initial PSR and also included two upward adjustments for obstruction of justice. The first was an increase of 2 levels under U.S.S.G. § 3C1.2 (Reckless Endangerment During Flight) for

> recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer when he ran from a car also occupied by Shawn Housby, while the officer was in pursuit and had his firearm drawn. Additionally, the defendant was ordered to come out of the house while numerous officers were outside

---

2 *See* R.17.

> the residence, keeping officers at bay for 2
> hours ....[3]

The second was an increase of 2 levels under U.S.S.G. § 3C1.1 (Obstructing or Impeding the Administration of Justice) because

> [t]he defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice ... when he had several conversations on a recorded line at the Rock Island County Jail. During the conversation, the defendant discussed who he believed cooperated against him while his girlfriend, mother, an unknown male and his associate Preston McDowell all made attempts to intimidate or contact a witness in the case on his behalf ....[4]

Specifically, in one of the calls, Mr. Moultrie stated that he would kill Waters and Conner, the two women in the vehicle, if they testified against him. In another call, Mr. Moultrie discussed with his mother how one of the "girl[s]" had retracted her statement and told his mother to "try to get them to tell the other girl do the same thing."[5] Mr. Moultrie's

---

[3] R.19 ¶ 33.

[4] *Id*. ¶ 34.

[5] *Id*. ¶ 18.

mother responded that "I've got it handled, I don't want to be saying s**t over the phone …."[6]

The revised PSR also recounted that one of Mr. Moultrie's associates, Preston McDowell, had approached Waters to ask her about the shooting, but Waters refused to talk to him. McDowell then stated that he was talking to her on Mr. Moultrie's behalf. Specifically, McDowell asked her if she would recant her statement or "if he could 'do something.'"[7] Waters asked McDowell "what he meant by 'something,' but he would not respond."[8] McDowell then informed her that, when Mr. Moultrie shot at the car, he did not know he was shooting at her; McDowell explained that Moultrie had taken some Xanax and mistakenly believed the vehicle "was a cop car."[9]

In addition to approaching Waters, McDowell posted on Facebook a picture of Mr. Moultrie that had been taken in the Rock Island County Jail where Mr. Moultrie was awaiting trial. In the photograph, Mr. Moultrie was flashing a gang sign, and McDowell had tagged Mr. Moultrie in the photo and added a hashtag "F***DaFeds."[10]

---

[6] *Id.*

[7] *Id.* ¶ 16.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 17.

Mr. Moultrie filed objections to the revised PSR, specifically, to its mention of gang affiliation and the enhancements under U.S.S.G. § 3C1.1 and 3C1.2. The probation office then prepared a second revised PSR. The second revised PSR retained the information regarding Mr. Moultrie's gang affiliation and the enhancement under § 3C1.2 for Reckless Endangerment During Flight based on Mr. Moultrie's fleeing from police and causing the standoff on the night of September 14, 2018; the PSR eliminated, however, the enhancement for Obstructing or Impeding the Administration of Justice under § 3C1.1 for participating in efforts to contact and intimidate witnesses. It therefore calculated Mr. Moultrie's offense level at 21. Combined with his criminal history category of III,[11] the resulting advisory guideline range was 46 to 57 months.

At the sentencing hearing,[12] the Government requested a sentence of "at least at the high end of the guideline range."[13] According to the Government, Mr. Moultrie's "actions were

---

[11] Mr. Moultrie had four criminal history points: 1 for his juvenile theft conviction; 1 for his adult possession conviction (marijuana and Xanax); and 2 for committing the instant offense while on probation for the possession charge.

[12] Before any testimony or argument concerning Mr. Moultrie's sentence, Mr. Moultrie's counsel advised the court that Mr. Moultrie was waiving any challenge to his indictment based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *See* R.40 at 4. The court examined Mr. Moultrie both on his knowledge of his rights under *Rehaif* and on the voluntariness of his waiver. The court then "accept[ed] the post-plea waiver as it relates to the *Rehaif* challenge—or potential *Rehaif* challenge." *Id*. at 7.

[13] *Id*. at 8.

a heartbeat away from murder."[14] Not only had he opened fire at an occupied car in a residential area, but he also had engaged in a violent standoff with police and had threatened to kill the women in the car if they testified against him. The Government also noted that Mr. Moultrie's "use of firearms [wa]s escalating," and the court "need[ed] to specifically deter him from doing the same thing again because we might not be so lucky next time."[15] The Government further submitted that a long sentence was necessary to promote general deterrence: "the Court's sentence should take countenance of the fact that this defendant is emblematic of other young men in our community who are affiliated with gangs, who are not cognizant of the risk they pose to other people, who do not believe the rules apply to them, and need to be generally deterred."[16]

For his part, Mr. Moultrie's counsel maintained that the guideline "range sufficiently account[ed] for some of the aggravating factors in this case."[17] Counsel explained that Mr. Moultrie's criminal history was not "extensive," that a five-year sentence was a "significant" sentence because it amounted to "a quarter of his life," and that his in-jail com-

---

[14] *Id.* at 10.

[15] *Id*. at 10–11.

[16] *Id*. at 15.

[17] *Id.* at 16.

ments were just "a lot of bluffing among young men trying to act tougher than they really are."[18]

While acknowledging that the specific offense characteristics captured some of the aggravating aspects of Mr. Moultrie's behavior, the district court concluded that the applicable guideline range did not "fully capture[]" the seriousness of Mr. Moultrie's criminal activity.[19] The court noted, for instance, that Mr. Moultrie was caught carrying a weapon while he was out on bond for the state armed-violence and possession-with-intent charges. Additionally, although Mr. Moultrie had received a two-level enhancement for his actions immediately following the shooting, the enhancement did not reflect the seriousness of Mr. Moultrie's actions:

> Not only did you flee the vehicle that the police were apprehending at the time -- after you shot out of it with a firearm -- into the house, but then you were in an essentially two-hour standoff with the police. During this time, you put several people at risk -- the officers, the other individuals involved in this offense, and the other individuals in the house, some of whom, I think, were even sleeping or didn't know what was happening.
>
> So, you created this extremely volatile and risky situation. … And I know you don't feel

---

[18] *Id*. at 18–19.

[19] *Id.* at 21.

> lucky today, but you are lucky because you're alive, the officers are alive, and everybody else involved in this -- including the people that you shot at -- are alive. So, it could have taken, in many different aspects, a wrong turn that would have really been irrevocable in terms of the tragedy.[20]

The court also noted that Mr. Moultrie's post-arrest behavior showed a lack of respect for the law: he had posed for a photograph while making a gang sign; he had attempted to justify the shooting on the ground that it was a "cop car"; and he had articulated a willingness to kill a witness if she testified against him.[21]

After recounting this "very disturbing conduct," the court concluded that the two-level enhancement for obstruction did not "capture[] all of these aggravating, specific circumstances."[22] Framing its conclusions in terms of the Guidelines, the court believed that an adjusted offense level of 23, as opposed to 21, better captured the severity of Mr. Moultrie's criminal behavior.

The court also considered that Mr. Moultrie had been involved in a number of crimes in a short period of time. The court stated that it was concerned with

---

[20] *Id.* at 22–23.

[21] *Id*. at 24.

[22] *Id*. at 25–26.

the fact that while on probation for [a juvenile] offense, you committed a new law violation.

…

… In fact, just months after being placed on that probation, you committed the offense -- the felony drug offense. Then while on probation for that offense, … you were arrested and charged with another gun offense, and while on bond for that offense, you committed this offense just a short time period later.

So, getting arrested on these other occasions didn't make you afraid or nervous because you just kept committing crimes. You kept on doing things, including the instant offense conduct here. And then also getting a sentence in another case, a felony case as an adult and being placed on probation didn't act as a deterrent for you, so now I have to look at that and see what do I -- what do I think your risk to recidivate is?

And I think a Criminal History Category of III underestimates that risk to recidivate for those reasons because the other two types of intervention by the courts -- being placed on bond and then also being placed on terms of supervision -- were not specific -- or sufficient for you.[23]

---

[23] *Id*. at 27–28.

The court also believed that "general deterrence" was a factor because of "the increase in shootings and gun crime and also with the decrease of respect for law enforcement and authorities which [we]re characteristics in [Mr. Moultrie's] case."[24] Given these considerations, the court determined that a criminal history category of IV better represented Mr. Moultrie's past criminal behavior.

Using the adjustments to the offense level and criminal history category, the court arrived at a new Guidelines range of 70 to 87 months and imposed a sentence of 84 months' imprisonment.

## II

## DISCUSSION

As we already have noted, Mr. Moultrie challenges only the substantive reasonableness of his sentence, which we review for an abuse of discretion. *See United States v. Fogle*, 825 F.3d 354, 358 (7th Cir. 2016). "As long as the sentencing judge gives an adequate justification, the judge may impose a sentence above the guidelines range if he believes the range is too lenient." *United States v. Hayden*, 775 F.3d 847, 849 (7th Cir. 2014) (citations omitted). Although a "major departure" from the Guidelines "should be supported by a more significant justification than a minor one," *United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)), "[t]here is no presumption that an above-guidelines sentence is unreasonable," *United States v. Lewis*, 842 F.3d 467, 477 (7th Cir. 2016). "We

---

[24] *Id*. at 31.

will uphold an above-guidelines sentence 'so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence.'" *Id.* (quoting *United States v. Gill*, 824 F.3d 653, 665 (7th Cir. 2016)) (citation omitted).

Here, the district court's sentence was grounded explicitly in the § 3553(a) factors.[25] The court noted the seriousness of Mr. Moultrie's conduct and how the Guidelines did not adequately account for the number of lives that he had put at risk. The court also observed that Mr. Moultrie had not been deterred by lesser measures. Finally, Mr. Moultrie's criminal boldness and lack of respect for the law appeared to be on the rise; especially concerning to the court was his participation in efforts to convince witnesses to recant their statements. All of these factors, grounded in § 3553(a)**,** warranted an above-guidelines sentence.

Mr. Moultrie argues, however, that the district court's sentence was unreasonable because the factors on which the district court rested its sentencing determination already had been accounted for in his sentence calculation. He notes that he received a four-level upward adjustment for aggravated

---

[25] Section 3553(a) of Title 18 lists, among others, the following relevant circumstances in determining a sentence: "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence "to reflect the seriousness of the offense[,]" "to promote respect for the law[,]" "to provide just punishment for the offense[,]" "to afford adequate deterrence to criminal conduct[,]" "to protect the public from further crimes of the defendant[,]" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

discharge of a firearm and a two-level enhancement for ob-
struction of justice based on his actions in trying to evade
custody.[26]

The district court, however, addressed explicitly why
these enhancements did not account adequately for
Mr. Moultrie's actions. Not only did Mr. Moultrie discharge
his weapon while fleeing in an automobile through a resi-
dential neighborhood, but he hid in Housby's residence,
putting occupants of the house in danger. He subsequently
engaged in a multi-hour standoff with police, placing the of-
ficers in harm's way as well. Moreover, the district court
noted that Mr. Moultrie's arrest did not mark the end of his
troubling behavior. While incarcerated awaiting trial,
Mr. Moultrie actively participated in plans to attempt to dis-
suade witnesses from testifying and voiced a willingness to
kill those who testified against him. The district court's sen-
tencing determination, therefore, took into consideration a
much broader swath of conduct than that covered by the
four-level enhancement and two-level adjustment. The court
concluded that, based on Mr. Moultrie's collective actions,
his offense level did not adequately reflect how dangerous
his conduct was and how little respect he had for law en-

---

[26] Mr. Moultrie does not argue explicitly that the district court's sentence
constituted impermissible double counting, nor would such an argument
be availing. "[D]ouble counting occurs only when, in the context of de-
termining the properly calculated guidelines range, the district court im-
poses two different increases based on identical facts or conduct." *United
States v. Gamble*, 395 F. App'x 290, 291 (7th Cir. 2010) (citing *United States
v. Diekemper*, 604 F.3d 345, 354–55 (7th Cir. 2010)). Here, there is no ques-
tion that, prior to considering the § 3553(a) factors, the court had proper-
ly calculated Mr. Moultrie's sentence under the Guidelines.

forcement and legal proceedings. We have upheld numerous above-guidelines sentences based on identical reasoning. *See, e.g.*, *United States v. Mejia*, 859 F.3d 475, 479 (7th Cir. 2017) (upholding an above-guidelines sentence based on the district court's conclusion "that the Guidelines did not adequately address Mejia's 'incredibly troubling' conduct"); *United States v. Gill*, 824 F.3d 653, 666 (7th Cir. 2016) (concluding that an above-guidelines sentence was not substantively unreasonable based on the district court's explanation that the "guidelines range did not capture the full range of [the defendant's] conduct and participation in violent acts").

Mr. Moultrie acknowledges that the district court's sentencing determination was based, in part, on conduct that was not encompassed in his guideline calculation, specifically his conduct while incarcerated awaiting trial. He maintains, however, that the district court should not have considered that conduct in rendering sentence. He notes that, in the first revised PSR, the probation office had included an enhancement under § 3C1.1 for Obstructing or Impeding the Administration of Justice based on his post-arrest conduct, but that it was removed in the second revised PSR. According to Mr. Moultrie, the court's consideration of this conduct was the equivalent of imposing an enhancement without putting the Government to its burden of proof. However, we have rejected previous attempts to limit the types of conduct that a court may consider at sentencing. *See United States v. Lucas*, 670 F.3d 784, 790 (7th Cir. 2012) (explaining that "[a] district court may consider a wide range of conduct at sentencing, including acquitted conduct and dismissed offens-

es").[27] The district court's consideration of Mr. Moultrie's post-arrest conduct therefore did not render his sentence unreasonable.[28]

Mr. Moultrie also maintains that the sentence was unreasonable because the district court overestimated the seriousness of his criminal history. Again he submits that his criminal history category adequately accounted for the concerns articulated by the court, namely that he committed the instant offense while on probation. Mr. Moultrie's probationary status, however, was only one of several considerations that the district court relied upon in concluding that his criminal history category underrepresented both the seriousness of his criminal activity and the likelihood that he would recidivate. The court was concerned that

---

[27] It also is not critical for the district court to state on the record that it found the operative facts by a preponderance of the evidence. *Cf. United States v. Holton*, 873 F.3d 589, 591–92 (7th Cir. 2017) ("When a judge does not find explicitly that a defendant committed uncharged conduct by a preponderance of the evidence, the sentence will be upheld if 'it is clear from the record' that the judge determined that the defendant is responsible for it."). It is clear from the sentencing transcript that the district court concluded that Mr. Moultrie had "coordinat[ed]" to have a witness recant her testimony and had expressed a willingness to kill witnesses who testified against him. R.40 at 24–25.

[28] Mr. Moultrie also maintains that the district court's attempt to frame its ultimate sentencing determination in terms of a guidelines calculation was problematic. We cannot agree. Indeed, in *United States v. Lucas*, 670 F.3d 784, 790 (7th Cir. 2012), the district court had reached a sentencing determination in a manner similar to the district court here, and we upheld the sentence, concluding that it was not the product of procedural error, nor was it substantively unreasonable. *See id.* at 790–92, 796–97.

Mr. Moultrie's repeated encounters with the law were not deterring Mr. Moultrie from engaging in criminal activity; indeed, despite these encounters, the number and severity of his crimes were increasing. Specifically, in February 2018, while on probation for a simple possession offense, Mr. Moultrie had been arrested and charged in state court with serious weapon and drug crimes. While out on bond, he had committed the instant offense involving the reckless use of a weapon. The court was concerned that Mr. Moultrie was on an increasingly serious criminal trajectory, that this activity had occurred over a very short period of time, and that his repeated interactions with the police and the criminal justice system did not seem to be deterring him in any way. The district court amply justified its decision to increase Mr. Moultrie's criminal history category to account for these considerations. *See United States v. Stinefast*, 724 F.3d 925, 933 (7th Cir. 2013) (citing "incorrigibility" among the relevant considerations for the district court in imposing an above-guidelines sentence); *Lucas*, 670 F.3d at 797 (7th Cir. 2012) (listing the fact that, "at the time of the offense, [the defendant] was on conditional release in Massachusetts for illegal possession of firearms" as part of the "compelling justification" that the court offered for the defendant's above-guidelines sentence).

## Conclusion

Mr. Moultrie's sentence was not substantively unreasonable, and we therefore affirm.

AFFIRMED