In the

# United States Court of Appeals
### For the Seventh Circuit

No. 23-1016

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN PATRICK COOK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:22-cr-40012 — **Sara Darrow**, *Chief Judge*.

ARGUED NOVEMBER 1, 2023 — DECIDED JULY 17, 2024

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Armed with what appeared to be a gun, Brian Cook entered a bank in a western Illinois village, threatened two tellers to give him money, and fled the scene with a bag full of cash. He later pleaded guilty to one count of bank robbery under 18 U.S.C. § 2113(a). During the sentencing hearing, the parties disputed whether Cook had simply "brandished" his gun (which turned out to be an air pistol) or

had "otherwise used" it in the commission of the crime; the former triggers a three-level enhancement to Cook's offense level under § 2B3.1(b)(2)(E) of the United States Sentencing Guidelines, while the latter prompts a four-level enhancement under § 2B3.1(b)(2)(D). The district court agreed with the government, applied a four-level enhancement, and sentenced Cook to 144 months of imprisonment and three years of supervised release. Cook now challenges that ruling as well as a number of other factors the court considered for sentencing. Finding no error, we affirm the judgment.

## I. Background

Cook entered Citizens National Bank in Roseville, Illinois, on July 31, 2021, wearing a blue hooded sweatshirt, a neck gaiter mask, and sunglasses. He immediately walked toward the teller window, pointed what appeared to be a gun at the teller, and announced, "you are being robbed."

Cook continued to point the gun (which authorities later determined was an air pistol) at the teller as he directed her to get money from the bank vault. As the teller was accessing the vault, Cook noticed a second teller, pointed the weapon at her, and instructed her to stay put. After the first teller opened the vault, Cook gave her a green floral-patterned grocery bag and instructed her to fill it with money. Cook then took the bag of money and fled.

A bank customer saw Cook flee in the passenger seat of a maroon Ford F-350 pickup truck and reported the truck and license plate number to the authorities. Within fifteen minutes of the robbery, law enforcement officers spotted the truck and conducted a traffic stop. Inside the truck in plain view were

the blue sweatshirt and a green floral-patterned grocery bag containing a large amount of cash.

After obtaining a search warrant for the contents of the truck, law enforcement officers found $193,000 in United States currency bundled in bank wraps, which noted Citizens National Bank's parent company as the owner. Officers also discovered five cell phones in the truck and a black air pistol in the pocket of the blue sweatshirt. Based on a search of the cell phones, law enforcement determined that Cook, who lived elsewhere, had searched the internet in the months before the robbery, searching for banks in the Roseville area and entering dozens of queries about Roseville's weather.

In May 2022, a federal grand jury returned an indictment charging Cook with bank robbery under 28 U.S.C. § 2113(a). Cook pleaded guilty to the crime three months later. In its presentence report, the United States Probation Office recommended 84 to 105 months' imprisonment followed by one to three years of supervised release based on a total offense level of twenty-five and a criminal history category of IV. In the report, the Probation Office recommended that the court apply a four-level enhancement under § 2B3.1(b)(2)(D).

At sentencing, the government concurred with the Probation Office that a four-level increase under § 2B3.1(b)(2)(D) was appropriate because Cook had pointed the gun at the two tellers and used the gun to direct a teller to the vault. Cook contested this account of the facts, argued that he only had brandished the gun during the robbery, and urged the court to adopt the three-level increase under § 2B3.1(b)(2)(E). The district court, after considering the arguments and reviewing videos of the event, found that Cook did more than simply

brandish the gun and applied the four-level enhancement to Cook's base offense level.

The district court did not stop there, however. It remarked that, even if it had applied only the three-level enhancement under § 2B3.1(b)(2)(E), it still would have imposed the same sentence because, in the court's words, Cook's criminal history was "the worst pattern of undeterred behavior of a single type of category offense that [the court had] ever seen." This history included multiple convictions for burglary, forgery, and theft, as well as for stealing property and possessing marijuana. Furthermore, finding that prior punishments and admonishments had not deterred Cook from criminality, the district court determined that an above-Guidelines sentence was necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a) and imposed a term of imprisonment of 144 months to be followed by three years of supervised release. Cook now challenges the sentence on numerous grounds.

## II. Analysis

As we have said on countless occasions, "[d]istrict courts have 'wide discretion in determining what sentence to impose.'" *United States v. Shaw*, 824 F.3d 624, 631 (7th Cir. 2016) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). "We will not disturb a district court's sentence unless it is procedurally or substantively unreasonable." *Id.*

Our review involves a "two-step process." *United States v. Major*, 33 F.4th 370, 378 (7th Cir. 2022). "First, we ensure that the sentencing judge did not commit any significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a

sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (internal quotation marks omitted). Procedural challenges to a criminal sentence are reviewed *de novo*, but the court's factual findings are reviewed for clear error. *United States v. Baldwin*, 68 F.4th 1070, 1074 (7th Cir. 2023).

If the district court followed the proper procedure, we then examine whether the sentence was substantively reasonable. *Jackson*, 547 F.3d at 792. When considering a sentence's substantive reasonableness, we review for an abuse of discretion. *United States v. Baker*, 56 F.4th 1128, 1133 (7th Cir. 2023). To be substantively reasonable, "[t]he sentencing court must apply the factors set forth in 18 U.S.C. § 3553(a) in deciding whether to impose a sentence within the advisory guidelines range." *Jackson*, 547 F.3d at 792. The open-ended nature of those factors "leav[es] the sentencing judge with considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with § 3553(a)." *Id.* (internal quotation marks omitted).

Indeed, "the mere fact that we might have chosen a different sentence in the first instance is insufficient for reversal." *Id.* This is because the "sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks omitted).

### A. "Brandishing" or "Otherwise Using"

According to Cook, the district court procedurally erred when it found that he had "otherwise used" the gun, thereby triggering the four-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D), rather than just "brandishing" it. If the district court had found the latter, Cook's Guidelines range would have been 77 to 96 months of imprisonment, rather than 84 to 105 months.

When construing the Guidelines, we start with the text and consult any relevant commentary. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (Guidelines commentary is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"); *United States v. White*, 97 F.4th 532, 537 (7th Cir. 2024) (following *Stinson*).

Section 2B3.1 of the Guidelines addresses robbery offenses. Subpart (b)(2)(D) mandates a four-level increase to the defendant's base offense level "if a dangerous weapon was otherwise used." Meanwhile, subpart (b)(2)(E) requires a three-level increase "if a dangerous weapon was brandished or possessed." To better understand what these terms mean, we refer to § 1B1.1 ("Application Instructions").

Application note 1(C) of that provision defines "brandished" to mean that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present." § 1B1.1, application note 1(C). At the same time, under

application note 1(J), "otherwise used" denotes conduct that "did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." § 1B1.1, application note 1(J).

As we have remarked elsewhere, these definitions are not exactly paradigms of clarity. *See United States v. Kruger*, 839 F.3d 572, 578 (7th Cir. 2016) ("[T]he language of the relevant guidelines and the accompanying commentary provide[] no clear guidance on what will distinguish mere brandishing of a weapon from other use, short of actual discharge of the weapon, that will qualify for the enhancement."). Nevertheless, when differentiating between the two, we have held that "brandishing typically occurs where a defendant generally displays a weapon or points the weapon at a group of people rather than a specific individual." *United States v. Eubanks*, 593 F.3d 645, 651 (7th Cir. 2010); *see United States v. Hernandez*, 106 F.3d 737, 741 (7th Cir. 1997) (recognizing the difference between "pointing or waving about a firearm and leveling the weapon at the head of a victim"). But where a defendant uses a dangerous weapon to create "a personalized threat of harm," he has more than "brandished" the weapon, he has "otherwise used" it. *Eubanks*, 593 F.3d at 651 (cleaned up).

Here, the parties agree that, after Cook entered the bank, he leveled the air pistol at a teller and stated, "you are being robbed." He then directed her to get money from the vault and commanded her to put the money in his bag. Cook also pointed the gun at a second teller and ordered her to stay put. As Cook sees it, this conduct falls short of warranting the four-level enhancement under § 2B3.1(b)(2)(D).

Cook first tries to distance himself from other cases where we affirmed the application of the four-level enhancement for

"otherwise using" a firearm, noting that he did not verbally threaten anyone with the gun. For example, Cook cites *United States v. Seavoy*, where we held that the district court did not clearly err in applying the four-level enhancement when the defendant had pointed a firearm at a bank loan officer, ordered her to lay on the floor, and later threatened that his accomplice would shoot one of the bank employees. 995 F.2d 1414, 1422 (7th Cir. 1993). Cook also points to *United States v. Warren*, where we affirmed the use of the "otherwise using" enhancement when the defendant had pointed a gun at a bank teller, ordered her into the vault room, and personally threatened her. 279 F.3d 561, 563 (7th Cir. 2002).

Cook tries to make these cases say more than they do. As we held in *United States v. Taylor*, "[n]othing in the language of [§ 2B3.1(b)(2)(D)] calls for the use of the weapon to be coupled with a verbal threat." 135 F.3d 478, 482 (7th Cir. 1998).

Cook also contends that § 2B3.1(b)(2)(D) requires some physical force to be used with the gun. In *Eubanks*, for instance, we affirmed the enhancement where the defendant had pointed his weapon at a specific employee and forced her to the ground. 593 F.3d at 651. Similarly, in *Hernandez*, another case affirming the enhancement, the defendant had held the kidnapping victim at gunpoint and "the firearm was part and parcel of the victim's forcible abduction." 106 F.3d at 741 (internal quotation marks omitted).[1]

---

[1] Although *Hernandez* involved the Sentencing Guideline for the use of a dangerous weapon during a kidnapping, abduction, or unlawful restraint, § 2A4.1(b)(3), in interpreting that Guideline, courts look to § 2B3.1(b)(2)(D) for instruction. *See* 106 F.3d at 741; *Kruger*, 839 F.3d at 578.

This argument, however, was laid to rest in *Warren*. There, the dispute centered around whether the defendant had touched the teller's back with a gun. 279 F.3d at 562. In affirming the application of the four-level enhancement, we concluded that "physical contact between the weapon and the victim is not a prerequisite to finding that the defendant 'otherwise used' a dangerous weapon." *Id.* Accordingly, whether the defendant had "touched the teller's back with the gun or whether he simply came close to touching her is not an important distinction for purposes of determining the applicability of the enhancement." *Id.* In fact, it was sufficient that the defendant had intimidated the victim and threatened her with the gun. *Id.* at 563 (noting "[w]e have affirmed 'otherwise used' adjustments when pointing a weapon at a specific victim created a personalized threat of harm").

Here, the district court determined that Cook had "clearly used the gun … to control [the teller's] movement and to comply with his commands which were very clear – – 'you are being robbed' – – and then [to] direct her with the gun to the vault and to maintain compliance with his further directives." The record supports this finding.

"Having a gun pointed at me telling me to hurry up demanding money scared me so much!" the first teller recounted. "The feeling of that gun pointed at me was a feeling of complete fear." Additionally, photographs of the bank robbery show that Cook leveled the gun directly at the teller. And he used the gun to threaten a second teller by pointing it at her and ordering her to stay put.

Given these facts, the district court did not clearly err in finding that Cook's conduct went beyond merely brandishing, displaying, or possessing a firearm, but rather, created a

personalized threat of harm to both bank tellers. Accordingly, the district court did not commit procedural error by applying the "otherwise used" enhancement.

But even if the district judge had procedurally erred by increasing Cook's offense level by four levels rather than three, that error would have been harmless. *See United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) ("A finding of harmless error is only appropriate when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights …."). Here, the district court went on to state:

> I think that even if my ruling on your guideline specific offense characteristics in terms of using the firearm as opposed to just brandishing is wrong legally, I still think that under 3553(a), the seriousness of the offense conduct, specifically as it relates to your use of … the dangerous weapon in directing the tellers with your commands and inducing compliance with the use of the firearm will be addressed similarly under 3553(a) with the sentence that I'm going to impose.

A court's statement that "it would have imposed the same sentence," even if it had improperly calculated the defendant's Guidelines range, renders the error harmless. *United States v. Shelton*, 905 F.3d 1026, 1031 (7th Cir. 2018). And, as we will discuss below, the court's assessment is well supported by the record.

### B.  The Above-Guidelines Sentence

Next, Cook argues that the district court procedurally and substantively erred when imposing a sentence that was above the Guidelines range. Among the factors the court considered in arriving at the sentence was Cook's criminal history and his efforts to select the particular bank. In Cook's view, the court procedurally erred by not adequately explaining why these two factors justified an upward variance. He also contends that his sentence is substantively unreasonable.

Cook's Guidelines range was 84 to 105 months of imprisonment. The Guidelines, of course, are advisory. *United States v. Booker*, 543 U.S. 220 (2005). The government asked the court to impose an imprisonment term of 120 months, but the court went further and levied a 144-month sentence. According to Cook, the court failed to sufficiently explain the basis for the above-Guidelines sentence, thereby committing procedural error.

Cook is correct that "failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"—is procedural error. *Gall*, 552 U.S. at 51. "[A] district court adequately explains a sentence or deviation when it thoroughly documents its reasoning therefor." *United States v. Jerry*, 55 F.4th 1124, 1132 (7th Cir. 2022) (cleaned up). Moreover, we must keep in mind that "[w]hen evaluating the procedural soundness of a sentence, we do not explore its reasonableness; that inquiry is reserved for a substantive challenge." *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021). Instead, the reviewing court focuses on "whether the record reveal[s] the district court's reasons for imposing the sentence." *Jerry*, 55 F.4th at 1132. And "a

major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

### 1. Prior Convictions

Here, the district court decided to impose a sentence greater than the Guidelines range after considering the 18 U.S.C. § 3553(a) sentencing factors, including Cook's extensive prior criminal history that stretched back decades. In doing so, the court did not rely upon an upward-departure Guidelines provision, but exercised its discretion under *Booker*, 543 U.S. 220, to vary from the Guidelines range. *See United States v. Crundwell*, 735 F.3d 743, 746 (7th Cir. 2013).

In Cook's view, an upward variance does the same job as an upward departure. Thus, he argues, the judge should have followed U.S.S.G. § 4A1.3(a)(1), a provision that allows an upward departure only when there is "reliable information" indicating that "a defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Although he acknowledges his extensive criminal past (which includes convictions not counted as part of his criminal history category), Cook believes that the court erred by not explaining how these old convictions reliably established that his criminal history category understates his criminality or likelihood of recidivism.

What Cook overlooks is that "[s]ince the Supreme Court decided *United States v. Booker*, however, we do not require a district court to follow § 4A1.3 when imposing an above-guidelines sentence." *United States v. McIntyre*, 531 F.3d 481, 483 (7th Cir. 2008) (citation omitted). After *Booker*, "sentencing judges have discretion under § 3553(a) to give non-guideline

sentences for reasons specific to the defendant or based on policy disagreements with the Guidelines." *United States v. Mansfield*, 21 F.4th 946, 956 (7th Cir. 2021) (internal quotation marks omitted). And "[n]onserious and outdated convictions may serve as the basis for an upward departure when they are evidence of a 'lifelong pattern of criminality.'" *United States v. Dawson*, 494 F. App'x 624, 627 (7th Cir. 2012) (quoting *United States v. Walker*, 98 F.3d 944, 947–48 (7th Cir. 1996)). Moreover, such convictions may "be considered for the limited purpose of establishing the incorrigible character of the defendant's criminal propensities." *Walker*, 98 F.3d at 948.

Here, contrary to Cook's contention, the district court provided a thorough explanation of its reasoning:

> [R]eally what's driving the train here is your personal history and characteristics and my extreme concern of your risk to recidivate, and I also think that the advisory guideline range very inadequately addresses that concern ….

The court continued:

> So, this is, by my count, your 13th but certainly in double digits offense involving stealing or theft or forgery or burglary or anything of that nature. This is perhaps the most serious one, so the trend is going in the wrong direction. The nature of your offense conduct, while still staying within that lane of being a thief, you're a serial thief and burglar. You're a career offender in the area of stealing. And this is going in the wrong direction because this is even a more serious and aggravating type of theft that you've

committed and that was, obviously, the armed bank robbery.

This is by far, I think, the worst pattern of undeterred behavior of a single type of category of offense that I've ever seen. Beginning at the age of 18, going all the way up until the present day, decades of stealing and putting others at – – having just a complete disregard for the property and possessions of others, and having a disregard of how your actions will impact others, and also having a complete disregard for any prior criminal justice system and for, in many ways, authority because of the way that you acted and interacted with parole officers and probation officers and the like.

In addition, the court observed that Cook had been in and out of prison his entire life for theft offenses. The judge listed, for instance, Cook's stealing and burglary convictions at age eighteen, forgery conviction at age nineteen, theft conviction at age twenty, stolen property conviction at age twenty-one, stealing and burglary conviction at age twenty-four, forgery conviction at age thirty-one, conviction for escape in a stolen vehicle while on work release at age thirty-one, and burglary conviction at age forty-six. Cook also had been on parole multiple times when he committed new crimes. The court summed up: "You've appeared in front of different judges. You've been admonished and sentenced, and you've served time, yet each and every one of those instances failed to deter you from your life-style. I don't know how else to describe this, but it's your life-style."

The court's statements clearly elucidated its thinking—Cook's convictions over four decades evidenced his lifelong pattern of criminality and obdurate character that made him less susceptible to deterrence than the typical offender. This determination is entirely reasonable given Cook's record. Accordingly, the district court did not procedurally err when it decided to impose a greater-than-Guidelines sentence based on the entirety of Cook's criminal background.

### 2.  Targeting a Small-town Bank

Another factor the district court highlighted during the sentencing hearing was Cook's efforts to target a small-town bank. Cook argues that the court provided no explanation as to why this was relevant information for sentencing. But the record shows otherwise.

In fact, the district court explained that Cook's decision to target a small-town bank was significant for two reasons. First, the evidence showed that Cook had deliberately targeted the bank after much research because it had fewer security measures. The video of the bank robbery supports this conclusion—a person could enter the lobby at will, and there was no security guard. Second, the court noted, tellers in smaller communities often know the customers and develop a higher level of trust—trust that Cook destroyed. This again is a reasonable assessment of the record, and the court did not err by considering these facts.

### 3.  Substantive Reasonableness

Relying on statistical information, Cook next contends that the district court abused its discretion in imposing a sentence far above the Guidelines range in what he believes was a run-of-the-mill bank robbery.

"We will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Aldridge*, 642 F.3d 537, 544 (7th Cir. 2011) (internal quotation marks omitted). Indeed, "there is no presumption that an above-guidelines sentence is unreasonable." *United States v. Moultrie*, 975 F.3d 655, 661 (7th Cir. 2020) (cleaned up). That said, an above-Guidelines sentence is more likely to be upheld as reasonable "if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *Jackson*, 547 F.3d at 792–93 (internal quotation marks omitted). Furthermore, it is worth mentioning that a "district court need not recite and apply every single § 3553(a) factor, so long as the record indicates that the district court considered the sentencing factors *in toto* and created an adequate record for review." *United States v. Hendrix*, 74 F.4th 859, 867 (7th Cir. 2023).

According to the Judiciary Sentencing Information database (which is administered by the United States Sentencing Commission), during the five years preceding Cook's sentencing, forty-four offenders had a total offense level of 24 (Cook's argument assumes that his total offense level is 24) and a criminal history category of IV. *See* https://www.ussc.gov/guidelines/judiciary-sentencing-information. The average term of imprisonment for these offenders was eighty-two months. Because his sentence exceeded the average by fifty-seven percent, Cook argues, it was substantively unreasonable.

The problem with this argument is that, in reviewing the reasonableness of a sentence outside of the Guidelines range,

the Supreme Court has "reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 552 U.S. at 47. Accordingly, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51.

Here, the district court gave a detailed explanation of why the circumstances in this case indicated that a within-Guidelines sentence was insufficient to reflect the sentencing factors enumerated in § 3553(a). First, the court stated, given Cook's entrenched criminal behavior and the inefficacy of his prior sentences, an above-Guidelines sentence was necessary to afford adequate deterrence and to protect the public from further criminal behavior. *See* § 3553(a)(2)(B), (C). The district court also explained that the upward variance was essential to promote respect for the law, given that Cook had continued to commit crimes even while serving terms of probation. *See* § 3553(a)(2)(A). Additionally, the court observed that the robbery marked an alarming trend to more serious crimes and, therefore, an above-Guidelines sentence better reflected the seriousness of the offense. *See id*. The court's thorough explanation of these considerations sufficiently justifies the above-Guidelines sentence.

Lastly, Cook argues that the district court undervalued the significance of his declining health and how it might impede his ability to commit further crimes. But district courts have broad discretion to weigh both aggravating and mitigating factors, and a defendant's disagreement with how a court balances these countervailing factors does not make a sentence

substantively unreasonable. *United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018); *see United States v. Saldana-Gonzalez*, 70 F.4th 981, 986 (7th Cir. 2023).

### III.  Conclusion

Because Cook's sentence was neither procedurally erroneous nor substantively unreasonable, the judgment is AFFIRMED.